1  Heather L. Rosing, Bar No. 183986
   Samuel B. Strohbehn, Bar No. 257697
2  Jamie M. Ritterbeck, Bar No. 286151
   KLINEDINST PC
3  501 West Broadway, Suite 600
   San Diego, California  92101
4  (619) 239-8131/FAX (619) 238-8707
   hrosing@klinedinstlaw.com
5  sstrohbehn@klinedinstlaw.com
   jritterbeck@klinedinstlaw.com
6
   Attorneys for Defendants
7  MARK DIONNE; SOCAL
   ACCOUNTING, INC.
8
                **UNITED STATES DISTRICT COURT**
9
              **SOUTHERN DISTRICT OF CALIFORNIA**
10

11 ALBERT CALDERON, et al.,        Case No.   3:15-cv-1632-BAS-NLS
12         Plaintiffs,             **MEMORANDUM OF POINTS AND**
                                   **AUTHORITIES IN SUPPORT OF**
13         v.                      **DEFENDANTS MARK DIONNE AND**
                                   **SOCAL ACCOUNTING, INC.'S**
14 TOTAL WEALTH                    **MOTION TO DISMISS PLAINTIFFS'**
   MANAGEMENT, INC., et al.,       **SECOND AMENDED COMPLAINT**
15
16         Defendants.            Date:         August 31, 2015
                                  Courtroom:    4B
17                                Judge:        Cynthia Bashant
                                  Magistrate Judge:  Nita L. Stormes
18

19 ///
20 ///
21 ///
22 ///
23 ///
24 ///
25 ///
26 ///
27 ///
28 ///

*(left margin)* KLINEDINST PC
501 WEST BROADWAY, SUITE 600
SAN DIEGO, CALIFORNIA  92101

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

KLINEDINST PC
501 WEST BROADWAY, SUITE 600
SAN DIEGO, CALIFORNIA 92101

## I. **INTRODUCTION**

Plaintiffs' Second Amended Complaint ("SAC") attempts to describe an investment fraud whereby Defendant Total Wealth Management ("TWM") and its principals, Cooper, McNamee, and Shoemaker, somehow misled Plaintiffs to believe their investment funds would be invested pursuant to an "optimized portfolio" plan, when they were instead invested primarily in three funds with whom TWM had fee sharing arrangements. Yet in the totality of Plaintiffs' 51 page pleading, Plaintiffs do not allege how they were misled or where, when, or in what manner they were actually defrauded. More egregiously, they also fail to allege any facts even suggesting how Mark Dionne and his firm SoCal Accounting (collectively "Dionne"), who merely did standard tax preparation and bookkeeping services for TWM, either knew of or in any way aided the unspecified fraud. Thus, for the second time, Plaintiffs fail to plead sufficient facts to support their claims.

Importantly, Dionne was not TWM's lawyer, or its compliance officer, or one of its officers, directors, or shareholders. Those persons all existed in the underlying fact pattern to this case and presumably were responsible to varying degrees for ensuring the investment solicitations, advice and disclosures complied with the law. Yet for reasons unknown, Plaintiffs have chosen not to add those professionals to this suit. Regardless, Plaintiffs have not pled any actual facts showing why or how Dionne—by merely doing standard bookkeeping and tax preparations and committing the apparently grave sin of appearing on a radio show to talk about general tax tips (an appearance which, according to the SAC, none of the Plaintiffs even heard) —somehow had the duty or ability to know that investment documents he was never even provided with contained (what Plaintiffs claim are) insufficient disclosures about revenue sharing fees, and a motive to conceal the same.

///

- 1 -

1    The SEC performed an investigation of this matter and took no action

2    whatsoever against Dionne. The notion that Plaintiffs cannot offer any specific

3    facts showing why or how Dionne knew or should've known of any fraud (or, for

4    that matter, what specific fraud even occurred), when an SEC administrative action

5    has already been issued—from which Plaintiffs' original complaint borrowed

6    liberally—is both telling and fatal. The Court should dismiss all claims against

7    Dionne with prejudice.

8    ## II.   SUMMARY OF PLAINTIFFS' ALLEGATIONS

9    Plaintiffs contend they brought this action to supplement an SEC action filed

10   against TWM, Cooper, McNamee, and Shoemaker. (SAC ¶1.) However, notably

11   absent from the SEC action, and thus naturally the present action, are any

12   allegations that implicate Dionne. Instead, Plaintiffs make only vague references to

13   an investment fraud and, in a weak attempt to throw Dionne into the mix, simply

14   tack his name onto the end of their generic allegations. But, Plaintiffs' tactic is

15   transparent. There is simply no substance to their claims.

16   Without providing the details, Plaintiffs allege that a long list of defendants

17   "organized and implemented a scheme to obtain funds from the public under false

18   pretenses." (SAC ¶4.) Without stating where, when, or how, Plaintiffs allege that

19   TWM "was presented to the public as an investment advisory business" when "[i]n

20   fact several investment operators had retained TWM to raise money from the

21   public by selling investment[s] to TWM customers." Id. They claim investors were

22   convinced to invest their money, with TWM, "in safe investments under a TWM

23   investment optimization plan." (SAC ¶5-13, 18-60.) However, Plaintiffs claim they

24   were defrauded because their funds were not invested pursuant to the "optimization

25   plan" and instead because TWM had fee sharing arrangements with LJL, AEGIS,

26   and PPCN. (SAC ¶4, 5, 13, 155, 199, 202, 204, 208.)

27   But, other than vaguely claiming they were induced by unspecific

28   representations about an unexplained "optimization plan", Plaintiffs completely

KLINEDINST PC
501 WEST BROADWAY, SUITE 600
SAN DIEGO, CALIFORNIA 92101

1   fail to allege any actual details about the purported fraud. They fail to allege where,

2   when, or how they were misled. They fail to describe where or when the

3   misstatements and misleading information appeared or the omitted information

4   should have appeared. They fail to describe specifically what they were told or not

5   told. Simply put, Plaintiffs' pleading contains only vague allegations and hollow

6   assertions.

7       In a weak attempt to tie Dionne into the mix of the unspecified fraud,

8   Plaintiffs allege that TWM sponsored a radio show on Saturday mornings, where

9   "listeners of the show were told they were receiving expert investment advice

10  regarding how to improve their financial condition." (SAC ¶7.) Plaintiffs contend

11  that Dionne made "periodic visits" on the show, where he gave general "tax

12  advice" and emphasized important tax tips and strategies for business owners and

13  other high net worth individuals. (SAC ¶8, 67.) Critically however, Plaintiffs do

14  not contend that Dionne gave false or misleading advice on the radio or that

15  anyone relied on his comments. Nor do they even allege more generally that any

16  false statements or misleading information was provided to listeners during the

17  show. (SAC ¶7-9.) Rather, the SAC only seems to suggest that maybe investors

18  heard the radio show and thereafter went to TWM's office where they might have

19  been presented with an unexplained "investment optimization" plan. (SAC ¶7-10,

20  67.) But, Plaintiffs' inference is a red herring, as only two Plaintiffs claim they

21  even actually heard the radio show; and both claim only to have heard Cooper—

22  not Dionne! (SAC ¶33, 36, 40.)

23      Plaintiffs next attempt to link Dionne to the vaguely described fraud by

24  alleging that he was the accountant and bookkeeper for TWM, ACOF, ACPS,

25  Pinnacle Wealth, Financial Council, and Capita Advisors. (SAC ¶64.) With only

26  conclusory allegations, Plaintiffs claim Dionne gave "substantial assistance to the

27  scheme by performing the administrative, bookkeeping [sic] and promoting sales

28  to victims of the scheme"—by way of his "periodic visits" on the radio show that

501 WEST BROADWAY, SUITE 600
SAN DIEGO, CALIFORNIA 92101
KLINEDINST PC

1   no Plaintiffs claim to have heard. (SAC ¶66, 33, 36, 40.) But again, nowhere do

2   Plaintiffs allege how Dionne's bookkeeping or accounting services were part of, or

3   otherwise assisted, the vaguely described fraud, or even that his services resulted in

4   any misstatements or concealments. Plaintiffs' references to Dionne are a thinly

5   veiled attempt to add an outside accountant with an insurance policy onto the long

6   list of defendants in this matter.

7          After repeating the same vague allegations over more than 150 paragraphs,

8   Plaintiffs attempt to state five causes of action against Dionne, all of which are

9   based upon the same vague investment fraud. Plaintiffs claim Dionne: (1) violated

10  Corporations Code section 25504 by controlling a person liable for fraudulent sale

11  of securities; (2) violated Corporations Code section 25504.1 by materially

12  assisting the fraudulent sale of securities; (3) violated Civil Code section 1710 by

13  suppressing material facts; (4) aided and abetted suppression of material facts; and

14  (5) aided and abetted breach of fiduciary duty. (SAC ¶159-162, 180-183, 196-202,

15  206-209.)

16  **III.   LEGAL STANDARD**

17         "To survive a motion to dismiss, a complaint must contain sufficient factual

18  matter, accepted as true, to state claim to relief that is plausible on its face."

19  *Zixiang Li v. Kerry*, 710 F.3d  995, 999 (9th Cir. 2013 (quoting *Ashcroft v. Iqbal*,

20  556 U.S. 662, 678 (2009)). A claim is facially plausible "when the plaintiff pleads

21  factual content that allows the court to draw the reasonable inference that the

22  defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678. The

23  plausibility standard requires more than the sheer possibility or conceivability that

24  a defendant has acted unlawfully. See *id.* at 678-79. "Where a complaint pleads

25  facts that are merely consistent with a defendant's liability, it stops short of the line

26  between possibility and plausibility of entitlement to relief." *Iqbal*, 556 U.S. at 678

27  (citation and internal quotation marks omitted). Bare assertions, unreasonable

28  inferences, and conclusory legal allegations cast in the form of factual allegations

KLINEDINST PC
501 WEST BROADWAY, SUITE 600
SAN DIEGO, CALIFORNIA 92101

are insufficient. *Id.* at 681; see also *Coto Settlement v. Eisenberg*, 593 F.3d 1031, 1034 (9th Cir. 2010). "Thus, a court discounts conclusory statements, which are not entitled to the presumption of truth, before determining whether a claim is plausible." *Chavez v. United States*, 683 F.3d 1102, 1108 (9th Cir. 2012).

Moreover, fraud based claims must be pled with particularity pursuant to Fed. R.Civ. P. 9(b). *Vess v. Ciba-Geigy Corp. USA*, 317 F.3d 1097, 1103 (9th Cir. 2003). Thus, "[a]verments of fraud must be accompanied by the who, what, when, where, and how of the misconduct charged." *Id.* at 1106. Moreover, "[a] plaintiff must set forth *more* than the neutral facts necessary to identify the transaction. The plaintiff must set forth what is false or misleading about a statement, and why it is false." *Id.* (emphasis in original). Likewise, where the fraud is based on omissions or concealments, not only must the plaintiff describe the content of the omission, but he must also "set forth an explanation as to why [the] omission complained of was false or misleading." *In Re Glenfed, Inc. Securities Litigation*, 42 F.3d 1541, 1547-1548 (9th Cir. 1994) (en banc) superseded by statute on other grounds as stated in *Marksman Partners, L.P. v. Chantal Pharm. Corp.*, 927 F.Supp. 1297 (C.D. Cal. 1996).

## IV.   ARGUMENT

### A.   Plaintiffs' Claims Against Dionne All Fail Because the Allegations Do Not Satisfy Rule 9(b)'s Pleading Standards

All five of Plaintiffs' causes of action against Dionne are premised upon a purported underlying investment fraud by TWM and its principals, Cooper, McNamee, and Shoemaker.  The SAC alleges they obtained investment funds from Plaintiffs without fully and adequately disclosing their receipt of revenue sharing fees derived from Plaintiffs' investments.  (SAC ¶154-158, 180-183, 197, 201-202, 206-209.) However, as referenced above and explained in further detail herein, critically absent from Plaintiffs' SAC are any allegations detailing the facts of the alleged investment fraud. That is, the SAC fails to allege, and thus it is completely

KLINEDINST PC
501 WEST BROADWAY, SUITE 600
SAN DIEGO, CALIFORNIA 92101

KLINEDINST PC
501 WEST BROADWAY, SUITE 600
SAN DIEGO, CALIFORNIA 92101

1   unknown, what was allegedly said or not said, by whom, and in what manner,

2   whether the alleged fraud was in writing or oral, or by one or all of the laundry list

3   of defendants. For this reason alone, all five causes of action against Dionne fail

4   and Plaintiffs' SAC must be dismissed. See *Vess*, 317 F.3d at 1106 ("Rule 9

5   demands that, when averments of fraud are made, the circumstances constituting

6   the alleged fraud be specific enough to give defendants notice of the particular

7   misconduct so that they can defend against the charge and not just deny that they

8   have done anything wrong…[; this requirement necessitates pleading facts which

9   show] the who, what, when, where, and how of the misconduct charged");*Grant v.*

10  *Aurora Loan Servs.*, 736 F.Supp.2d 1257, 1273-1274 (C.D. Cal. 2010) (dismissing

11  fraud claims as insufficiently pled under Rule 9(b) where plaintiff failed to allege

12  the time and place of the purported fraud, as well as the actual identity of the

13  defendant he allegedly interacted with);*Velasquez v. Chase Home Finance LLC*,

14  No. C 10-01641 SI, 2010 U.S. Dist. LEXIS 82065, 2010 WL 3211905, *6 (N.D.

15  Cal. Aug. 12, 2010) (dismissing fraud claims where plaintiff failed to allege facts

16  demonstrating when the concealment took place and why or when each of the

17  defendants allegedly had knowledge of the omitted information);*Gomez v.*

18  *Calpacific Mortg. Consultants, Inc.*, No. 09-CV-2926-IEG (CAB), 2010 U.S. Dist.

19  LEXIS 64555, 2010 WL 2610666, *3 (S.D. Cal. June 29, 2010) (dismissing fraud

20  claims where plaintiff failed to allege facts explaining why the alleged

21  misstatement was false).

22      **B.**   **Plaintiffs Fail to State Claims for Securities Violations**

23      California Corporations Code section 25401 prohibits misrepresenting or

24  omitting material facts in connection with the purchase or sale of a security.

25  Section 25501 establishes civil liability for a violation of section 25401; however,

26  it only applies to a person who is directly responsible for violating section 25401

27  as a consequence of selling or buying securities by means of misrepresentations or

28  omissions of material fact. *AREI II Cases*, 216 Cal.App.4th 1004, 1013 (2013).

Under certain conditions, liability may be imposed upon specific secondary actors who assist the primary actor in violating section 25401. Relevant here, are sections 25504 and 25504.1, which form the basis of Plaintiffs' first two claims against Dionne. (SAC ¶159-162, 180-183.)  But both fail because Plaintiffs do not allege sufficient facts to establish either the purported underlying securities law violation or any specific acts by Dionne that create liability.

        **1.    Plaintiffs' Second Claim Under § 25504 Fails Because the SAC Fails to Allege Dionne Controlled a Person Liable for Securities Fraud**

Plaintiffs have failed to plead facts establishing that Dionne "controlled" any person primarily liable for securities fraud. Section 25504 extends secondary liability to every person who "directly or indirectly controls a person liable under sections 25501 and 25503." Corp. Code § 25504. To satisfy the control requirement, a plaintiff must state "facts from which an inference can be drawn that the defendant 'had the power to control the general affairs of the entity primarily liable at the time the entity violated the securities laws … [and] had the requisite power to directly or indirectly control or influence the specific corporate policy which resulted in the primary liability.'" *Hellum v. Breyer* (2011) 194 Cal.App.4th 1300, 1315-1316, n.8 (relying on federal law and explaining that "the language 'controls a person' as used in section 25504 requires the same pleading allegations as the language 'controls any person' as used in Title 15 of the Securities Act"); see also *Special Situations Fund III QP, L.P. v. Brar*, No. 14-CV-04717-SC, 2015 U.S. Dist. LEXIS 38825 at *32-34. Plaintiffs do not even come close to meeting this standard.

First, Plaintiffs fail to properly allege the initial component of the control requirement—that Dionne had the power to control the general affairs of TWM, ACOF, and ACPS—because Dionne is only an accountant and bookkeeper. (SAC ¶135.) In fact, Plaintiffs' SAC clearly alleges that TWM, ACOF, and ACPS were

KLINEDINST PC
501 WEST BROADWAY, SUITE 600
SAN DIEGO, CALIFORNIA 92101

1    "under the common control of defendants Cooper, McNamee, and Shoemaker"—

2    not Dionne. (SAC ¶74-76.) Plaintiffs do not allege that Dionne owned TWM,

3    ACOF, or ACPS. Nor do they allege Dionne acted as an officer, board member, or

4    principal executive officer, director, or employee. Instead, Plaintiffs allege Cooper

5    co-founded TWM, and "through his position as co-founder and majority owner of

6    TWM, control[led] TWM." (SAC ¶62.) Likewise, Plaintiffs allege McNamee

7    served as TWM's president and chief compliance officer, and that TWM was

8    under his "common control through his position as president. (SAC ¶63.) Plaintiffs

9    also allege Shoemaker was TWM's co-founder and former chief compliance

10   officer and TWM "was under [his] common control." (SAC ¶68.)

11   These clear assertions readily contradict Plaintiffs' transparent and

12   conclusory attempt to allege control by Dionne by merely adding him to a list of

13   names and repeating the language of the statute: "The Coopers, McNamee,

14   Shoemaker, Fowler, and Dionne are persons who controlled TWM, ACOF, and

15   ACPS through ownership, as officers, board of director members, as principal

16   executive officers or directors, or as persons occupying a similar status or

17   performing similar functions or as an employee of TWM, ACOF, or ACPS

18   because they are employees who materially aided the acts or transactions

19   constituting the violations." (SAC ¶160.) Such a conclusory allegation is

20   insufficient to state a cause of action under section 25504. *Special Situations Fund*

21   *III QP, L.P.*, at *32-34 (control liability claims dismissed where there were "no

22   particularized allegations at all regarding [defendants'] participation in [the

23   primary violator's] day-to-day affairs or any specifics regarding their ability to

24   control the corporation").

25   Second, Plaintiffs also fail to allege facts that demonstrate Dionne "had the

26   requisite power to directly or indirectly control or influence the specific corporate

27   policy which resulted in the primary liability" because they fail to even allege what

28   the primary securities law violation in question was. See *Jackson v. Fischer*, 931

KLINEDINST PC
501 WEST BROADWAY, SUITE 600
SAN DIEGO, CALIFORNIA 92101

F.Supp.29 1049, 1064 (N.D. Cal. 2013) ("in the absence of a viable claim of primary liability, plaintiff cannot state a claim against the D&O defendants for control person liability under § 25504").  Again, the SAC makes only vague references to a scheme whereby Plaintiffs claim they were not informed of TWM's revenue sharing agreements. But the details of the scheme are not alleged, and the purported securities violation is unknown. And, in any event, even if Plaintiffs did allege facts demonstrating some sort of securities fraud, the SAC contains absolutely no allegations that suggest Dionne had any control or influence over any corporate policies, let alone the specific corporate policy that resulted in the primary liability.

For both these reasons, Plaintiff's second claim for relief necessarily fails.

**2.      Plaintiffs' Seventh Claim Under § 25504.1 Fails Because the SAC Fails to Allege Dionne Materially Assisted the Fraudulent Sale of Securities**

Plaintiffs' seventh claim for relief similarly fails because Plaintiffs have not pled specific facts establishing that Dionne "assisted" a securities violation. Secondary liability is created under section 25504.1, which provides that "[a]ny person who materially assists in any violation of section … 25401 … with intent to deceive or defraud, is jointly and severally liable with any other person [so] liable." To support liability under section 25504.1, a "complaint must include allegations demonstrating how the defendant assisted in the act of selling or offering to sell securities by means of false and misleading statements."*AREI II Cases*, 216 Cal.App.4th at1015. It is "not enough that a person provided material assistance in a larger scheme to defraud if that person had no role or involvement in the part of the scheme that constituted a violation of the securities laws."*Id*. at 1014. Thus, a complaint must state specifically how the defendant assisted in the specific act(s) constituting the securities fraud and plead specific facts, not conclusions, demonstrating such assistance was done with intent to defraud.*Id*. at 1014-1015.

KLINEDINST PC
501 WEST BROADWAY, SUITE 600
SAN DIEGO, CALIFORNIA 92101

- 9 -

KLINEDINST PC
501 WEST BROADWAY, SUITE 600
SAN DIEGO, CALIFORNIA 92101

1   First and most obviously, Plaintiffs fail to allege that Dionne ever assisted in

2   the offer, sale, or purchase of a security. This alone is fatal to their claim. See

3   Corp. Code § 25401.

4   Second, Plaintiffs do not plead facts sufficient to show the primary securities

5   violation at issue. Plaintiffs are obligated demonstrate how Dionne assisted in the

6   specific act constituting the securities fraud; however, it is impossible to assess

7   whether Dionne assisted in the specific violation where the specific violation itself

8   is unknown. See *Doan v. Singh*, 1:13-cv-00531-LJO-SMS, 2013 U.S. Dist. LEXIS

9   87172 at *30, 2013 WL 3166338 (E.D. Cal. Jun. 20, 2013) (dismissing claim under

10   25504.1 because the primary violation was not sufficiently alleged);*Wallack v.*

11   *Idexx Labs, Inc.*, No. 11cv2996-GPC(KSC), 2013 U.S. Dist. LEXIS 131403, at

12   *33 (same). At most, the SAC alleges a vague scheme whereby Plaintiffs were

13   misled to believe their funds were invested under an "optimized portfolio plan"

14   when in fact they were invested primarily with LJL, PPCN, and AEGIS. (SAC

15   ¶155, 156.) But Plaintiffs' vague allegations are insufficient to impose liability, as

16   they fail to describe how TWM, ACOF, and ACPS, defrauded Plaintiffs in

17   connection with the offer, sale, or purchase of a security. See Corp. Code § 25401;

18   *Doan*, at *30; *Wallack*, at *33.

19   For example, Plaintiffs do not allege where, when, or how they were misled

20   to believe their funds were going to be invested under an "optimized portfolio

21   plan," or even what an "optimized portfolio plan" is. Likewise, Plaintiffs do not

22   allege where, when, or how TWM's revenue sharing arrangements were not

23   disclosed, or where they should have been disclosed. Nor do they provide any

24   detail about "the investment terms plaintiffs were told would govern their

25   investments." Simply put, the SAC contains absolutely no allegations explaining

26   how Plaintiffs were defrauded with respect to an offer, sale, or purchase of a

27   security. Was it by way of offering documents, a subscription agreement, an

28   investment agreement, a limited partnership agreement? It is simply unknown.

KLINEDINST PC
501 WEST BROADWAY, SUITE 600
SAN DIEGO, CALIFORNIA 92101

1   What is known, however, is that "for purposes of section 25504.1, it is not

2   enough that a person provided material assistance in a larger scheme to defraud if

3   that person had no role or involvement in the part of the scheme that constituted a

4   violation of the securities laws." *AREI II Cases*, 216 Cal.App.4th at 1018

5   (dismissing claim under section 25504.1 for materially assisting misstatements and

6   omissions in PPM document where the complaint failed to allege the defendant

7   had a role in selling or offering to sell securities by false and misleading statements

8   in the PPM). Thus, as a threshold matter, if Plaintiffs wish to hold Dionne liable

9   for materially assisting a securities violation, it is critical they specifically allege

10   the securities violation at issue.

11   Finally, Plaintiffs' action for materially assisting a security violation fails for

12   a third reason: Plaintiffs fail to allege the requisite intent. To state a material

13   assistance claim, there must be allegations establishing that the defendant

14   materially assisted in the commission of the primary violation "with intent to

15   deceive or defraud." Corp. Code § 25504.1. To satisfy this element, Plaintiffs must

16   allege that Dionne intended "to induce reliance on the knowing misrepresentation

17   or omission." *Apollo Capital Fund v. Roth Capital* (2007) 158 Cal.App.4th 226,

18   257. Here, Plaintiffs fail to allege that Dionne acted with any type of intent, let

19   alone with the fraudulent intent to induce Plaintiffs' reliance on a knowing

20   misrepresentation or omission. In fact, Plaintiffs' failure to identify the

21   misrepresentation or omission at issue necessarily precludes them from alleging

22   such.

23   In sum, Plaintiffs do not come close to stating a claim against Dionne under

24   section 25504.1. As such, their claim must be dismissed.

25   **C.   Plaintiffs' Eleventh Claim for Suppression of Material Facts Fails**

26   Plaintiffs next attempt to state a claim against Dionne for suppression of

27   material facts. But like the securities fraud claims, Plaintiffs' claim fails because it

28   is not pled at all, much less with specificity.

To state a claim for suppression of material facts, Plaintiffs must allege: (1) Dionne concealed or suppressed a material fact; (2) Dionne had a duty to disclose; (3) Dionne intentionally concealed or suppressed the fact with intent to defraud Plaintiffs; (4) Plaintiffs were unaware of the fact and would not have acted as they did if they had known of the fact; and (5) as a result of the concealment or suppression, Plaintiffs sustained damage." *Linear Tech. Corp. v. Applied Materials* (2007) 152 Cal.App.4th 115, 131; see also *Wallack, at \*34; Doan*, at \*22-23. Suppression of material facts is a species of fraud, and fraud must be pleaded with specificity. *Wallack*, at \*33-35; *Doan*, at \*20. General and conclusory allegations do not suffice. *Doan*, at \*21.

Plaintiffs fail to sufficiently allege any of the required elements. Instead, Plaintiffs ignore their pleading burden and attempt to state a claim for fraud by making only vague references to a fraud scheme. At most, Plaintiffs allege "Defendants suppressed material facts in their dealings and communications with investors, which consisted of writings describing the investments and investment objectives and in the later reports and financial statements they gave to investors when they were bound to disclose it either because defendants needed to make that which they stated not misleading or because they had a duty of disclose of material facts to plaintiffs." (SAC ¶197.) In equally conclusory terms, Plaintiffs contend that "Defendants participated and were part of the team that delivered the message to plaintiffs that plaintiffs' funds would be invested under an optimized portfolio plan when in fact the funds were channeled primarily to three investments, PPCN, LJL, and AEGIS under undisclosed agreements and because of undisclosed fees paid by the recipients of the funds." (SAC ¶199.) This is extremely deficient and nowhere near what is required to successfully state a claim for fraud.

"Rule 9(b) demands that the circumstances constituting the alleged fraud 'be specific enough to give defendants notice of the particular misconduct . . . so that they can defend against the charge and not just deny that they have done anything

KLINEDINST PC
501 WEST BROADWAY, SUITE 600
SAN DIEGO, CALIFORNIA 92101

wrong.'" *Kearns v. Ford Motor Co.* 567 F.3d 1120, 1124 (9th Cir. 2008) (quoting *Bly-Magee v. California*, 236 F.3d 1014, 1019 (9th Cir. 2001). Thus, "[a]verments of fraud must be accompanied by 'the who, what, when, where, and how' of the misconduct charged." *Id.* (quoting *Vess*, 317 F.3d at 1106). "Rule 9(b) serves three purposes: (1) to provide defendants with adequate notice to allow them to defend the charge and deter plaintiffs from the filing of complaints as a pretext for the discovery of unknown wrongs; (2) to protect those whose reputation would be harmed as a result of being subject to fraud charges; and (3) to prohibit plaintiffs from unilaterally imposing upon the court, the parties and society enormous social and economic costs absent some factual basis." *Id.* at 1125 (internal cites omitted).

Here, the SAC is fatally defective because it fails to adequately plead that Dionne concealed or suppressed material facts. Plaintiffs only generally aver that TWM's receipt of revenue sharing fees was not disclosed and generically reference an unidentified "message" and unspecified writings, reports, and financial statements. (SAC ¶197, 199.) This is woefully inadequate to state a claim for fraud. To plead tort liability based on false or incomplete statements, the pleader must set forth at least the substance of those statements. See *Blickman Turkus, LP v. MG Downtown Sunnyvale, LLC*, 162 Cal.App.4th 858, 878 (2008). The SAC does not allege what Dionne purportedly failed to disclose or how or when he failed to disclose it. Nor does it allege what affirmative representations, if any, Dionne purportedly made without fully disclosing additional, material information, which qualified the statements he did make or rendered the statements likely to mislead. *Id*; see also *Wallack*, at *35.

Critically, the SAC fails to identify any statement that was rendered false or inaccurate by any failure of disclosure. Instead, Plaintiffs' pleading is pregnant with fatal ambiguity. It asserts that unspecified defendants made unspecified statements about TWM's receipt of revenue sharing fees. Plaintiffs' utter failure to allege what document, report, and/or information that Plaintiffs purportedly

KLINEDINST PC
501 WEST BROADWAY, SUITE 600
SAN DIEGO, CALIFORNIA 92101

KLINEDINST PC
501 WEST BROADWAY, SUITE 600
SAN DIEGO, CALIFORNIA 92101

1  received that was false, inaccurate, or did not include all pertinent information

2  pertaining to fees, dooms their claim for suppression of material facts. See

3  *Whitehurst v. Bank2 Native Am. Home Lending, LLC,* 2014 U.S. Dist. LEXIS

4  126917 at *13 (E.D. Cal. Sept. 9, 2014); Cansino, 224 Cal.App.4th at 1471

5  (dismissing fraud claims based on misstatements made in an appraisal where

6  plaintiffs failed to specify who prepared the appraisal, made the representations, or

7  at the very least provide the court with the appraisal document).

8      Plaintiffs' suppression claim also fails for the separate reason that Plaintiffs

9  fail to allege that Dionne had the requisite intent. Liability for concealment

10  requires that defendant have "suppressed the fact with the intent to defraud the

11  plaintiff." See *Marketing West v. Sanyo Fisher* (1992) 6 Cal.App.4th 603, 613. In

12  the context of concealment, intent is established by showing that a defendant

13  intended to induce action or inaction on the part of the plaintiff. *Blickman*, 162

14  Cal.App.4th at 869. Here, Plaintiffs fail to allege Dionne's mental state, let alone

15  that he acted with the requisite intent. For this reason alone, Plaintiffs fail to state a

16  claim for suppression of material facts. See *Twombly*, 550 U.S. at 562 ("a

17  complaint … must contain either direct or inferential allegations respecting all the

18  material elements necessary to sustain recovery under some viable legal theory").

19      Moreover, Plaintiffs also fail to allege reliance. To establish this element,

20  Plaintiffs must show they actually relied on the omitted information, and they were

21  reasonable in doing so. *Gerard v. Wells Fargo Bank, N.A.,* 2015 U.S. Dist. LEXIS

22  66167, AT *42 (C.D. Cal. May 19, 2015); *OCM Principal Opp. Fund v. CIBC*

23  *World Mkt* (2007) 157 Cal.App.4th 835, 864. In concealment cases, actual reliance

24  is established by alleging "that had the omitted information been disclosed, the

25  plaintiff would have been aware of it and behaved differently." OCM Principal

26  Opp. Fund, at 864; *Boschma*, 198 Cal.App.4th at 250-251. Not surprisingly,

27  Plaintiffs fail to meet this standard, as Plaintiffs cannot have relied upon something

28  they cannot, and have not, described in any fashion.

KLINEDINST PC
501 WEST BROADWAY, SUITE 600
SAN DIEGO, CALIFORNIA 92101

1    In fact, Plaintiffs' only attempt to allege any type of reliance related to

2 Dionne actually demonstrates that Plaintiffs have not, and cannot, state a claim

3 against Dionne. Plaintiffs allege that "Dionne used 'tax advice' he gave on the

4 TWM radio program on KOGO radio to drive victims into the TMM [sic] office

5 where they were induced to give their funds to TWM, ACOF, and ACSP [sic]."

6 (SAC ¶67.) But critically, Plaintiffs do not contend that Dionne provided false,

7 misleading, or half true information to induce Plaintiffs to invest in TWM. At the

8 very most, Plaintiffs claim Dionne gave "tax advice" that resulted in unnamed

9 "victims"—not Plaintiffs, who admit they never even heard Dionne—to look

10 further at TWM for investment advice, where they were later induced by

11 unidentified people—not Dionne—in unidentified ways. (SAC ¶67.) This is

12 insufficient to establish that Plaintiffs relied upon anything Dionne said, or did not

13 say. See *In re GlenFed, Inc. Sec. Litig.*, 60 F.3d 591, 592 (9th Cir. Cal. 1995)

14 (citing *Mirkin v. Wasserman*, 5 Cal.4th 1082 (1993) (holding plaintiffs must

15 establish reliance to state a claim for deceit and where a plaintiff cannot

16 demonstrate he heard the misinformation and acted as a result, he fails to state a

17 claim for deceit). Plaintiffs' claim against Dionne for concealment fails.

18    **D.    Plaintiffs' Twelfth Claim for Aiding and Abetting Fraud Fails**

19    Plaintiffs' claim for aiding and abetting fraud fails because Plaintiffs do not

20 allege that Dionne knew the conduct of TWM, Cooper, McNamee, Shoemaker, or

21 any other defendant, constituted fraud, or that Dionne gave them substantial

22 assistance or encouragement. In fact, Plaintiffs have not even alleged the purported

23 fraud that Dionne somehow aided and abetted.

24    "Liability may … be imposed on one who aids and abets the commission of

25 an intentional tort if the person (a) knows the other's conduct constitutes a[n

26 intentional tort] and gives substantial assistance or encouragement to the other to

27 so act; or (b) gives substantial assistance to the other in accomplishing a tortious

28 result and the person's own conduct, separately considered, constitutes a breach of

- 15 -

a duty to the third person." *Saunders v. Sup. Ct.* (1994) 27 Cal.App.4th 832, 846.

Knowledge of the underlying tort is critical, as "courts have long held that liability

for aiding and abetting depends on proof the defendant had actual knowledge of

the specific primary wrong the defendant substantially assisted." *Casey v. U.S.*

*Bank Nat.*, 127 Cal.App.4th 1138, 1145-46 (2005); *Henry v. Lehman Commer.*

*Paper, Inc.* (*In re First Alliance Mortg. Co.*)*,* 471 F.3d 977, 993 (9th Cir. Cal.

2006). "[A] defendant can only aid and abet another's tort if the defendant knows

what 'that tort' is." *Id.*

Here, the underlying tort is suppression of material fact, but the details of the

suppression are not alleged. Like Plaintiffs' other claims, this one is premised on

the vague "scheme" whereby "plaintiffs' funds were not being invested pursuant to

a portfolio optimization plan but rather because of undisclosed agreements and fees

with PPCN, LJL, and AEGIS." (SAC ¶202.)  But, because Plaintiffs fail to allege

any of the actual details of the underlying tort—what was suppressed, where, how,

when, or by whom it was suppressed, Plaintiffs' aiding and abetting claim against

Dionne necessarily fails.

The SAC alleges that Dionne "knew" that TWM had revenue sharing

agreements with PPCN, LJL, and AEGIS, and that investors were not told about

the agreements. (SAC ¶67, 202.) It also alleges that Dionne gave substantial

assistance to the purported scheme by performing bookkeeping services (i.e., by

doing what he was hired to do) and by providing tax tips (not investment tips) on

the radio (which Plaintiffs never heard or relied upon). (SAC ¶66, 67.) But,

Plaintiffs' allegations of Dionne's purported knowledge and assistance are of no

help, where Plaintiffs have plainly failed to state the alleged failures to disclose at

issue. That is, how can Dionne have knowledge of or assist omissions where the

omissions are completely unknown? Moreover, how is it a bookkeeper would have

the ability, much less the duty, to know whether unspecified statements, in

documents and conversations that he never even saw or was a part of, failed to

- 16 -

KLINEDINST PC
501 WEST BROADWAY, SUITE 600
SAN DIEGO, CALIFORNIA 92101

1    sufficiently disclose information about fee sharing agreements for  investments that

2    he did not advise Plaintiffs on. Again, Dionne was not a principal or officer of

3    TWM, he was not an investment advisor or manager, he was not a lawyer, he was

4    not a compliance officer, or even an auditor. The SAC does not provide any

5    specific facts showing why or how he would have or should have known such

6    things. Rather, it offers a mere conclusory allegation that he "knew."  This is the

7    height of cynical and self-serving pleading.

8        The closest Plaintiffs come to identifying a specific place where information

9    might have been concealed or suppressed is by including snapshots of advertising

10   that was allegedly "used to mislead investors to transfer and maintain their funds

11   with TWM, ACOF, [and] ACPS". (SAC ¶146.) However, other than including the

12   pictures of the purported ads, Plaintiffs fail to allege how the ads were misleading,

13   what was false about the ads, whether Plaintiffs even saw the ads.  Plaintiffs also

14   fail to allege whose ads they are, where they were used, or when. Without this

15   critical information, Plaintiffs cannot state a claim against Dionne for aiding and

16   abetting suppression of material facts. How can Dionne have knowledge of

17   purportedly misleading ads, where Plaintiffs do not even state how the ads are

18   misleading, or whether Plaintiffs themselves were misled by the ads? Likewise,

19   how can Dionne provide assistance with regard to purportedly misleading ads,

20   where Plaintiffs do not even state who was doing the advertising or where, when,

21   or how it was done? In fact, Plaintiffs fail to allege that Dionne had anything to do

22   with any type of advertising—let alone fraudulent advertising. Plaintiffs cannot

23   genuinely claim Dionne, as bookkeeper and accountant, was responsible for, or

24   otherwise involved in, preparing and disseminating ads to investors. Plaintiffs'

25   claim for aiding and abetting suppression of material facts plainly fails. See e.g.

26   *Perez v. Nidek Co.*, 711 F.3d 1109, 1113 (9th Cir. Cal. 2013) (conclusory and bare

27   bones words and phrases without any factual content … are insufficient" to state a

28   claim for aiding and abetting liability or to survive a motion to dismiss);*In re*

KLINEDINST PC
501 WEST BROADWAY, SUITE 600
SAN DIEGO, CALIFORNIA 92101

*Hydroxycut Mktg. & Sales Practices Litig*, 299 F.R.D. 648, 657 (dismissing aiding and abetting theory where plaintiff failed to allege facts supporting an inference that the defendants knew of alleged wrongful conduct);*Jennings v. Wash. Mut. Bank, No.,* CIV S102126 FCD CMK, 2011 WL 775861, 2011 U.S. Dist. LEXIS 19281, at *9-10 (E.D. Cal. Feb. 25, 2011) ("conclusory allegations cannot sustain an aiding and abetting claim").

The flaws in the SAC are illuminated by the court's analysis in*Casey*, 127 Cal.App.4th 1138, clearly demonstrates the pleading hurdles a plaintiff must overcome to adequately allege aiding and abetting liability.*Id*. at 1148-1149. (relying on Ninth Circuit authority). There, the plaintiff tried to state a claim against a bank for aiding and abetting officers and directors' breach of fiduciary duty to a corporation in their scheme to divert more than $36 million in investor funds from the corporation.*Casey*, 127 Cal.App.4th at 1142. And, although the plaintiff alleged the bank knew the officers and directors were involved in "a criminal or dishonest and wrongful enterprise and were, at the very least, laundering money" and "withdrawing money from accounts with the use of forged checks that exceeded written limits", and carrying large, unreported amounts of cash out of the bank in 'unmarked duffel bags'", the court rejected the plaintiff's pleading, and held it insufficiently alleged that the bank had knowledge of precise wrongful conduct at issue; namely, that the officers and directors were misappropriating funds from the corporation.*Id*. at 1149, 1152-1153. Here, the SAC falls even further from alleging sufficient knowledge of the primary wrong as it fails to even allege the concealments at issue.

*Casey* teaches that the primary wrong must be precisely identified, and a plaintiff's pleading must include allegations that establish the defendant had knowledge of the specific wrong, not some general wrongful conduct. 127 Cal.App.4th at 1152-53. Here, Plaintiffs' vague references to a scheme to defraud investors by failing to disclose revenue sharing fees is far from what is required.

KLINEDINST PC
501 WEST BROADWAY, SUITE 600
SAN DIEGO, CALIFORNIA 92101

1  Plaintiffs' aiding and abetting concealment theory fails. Dionne's motion to

2  dismiss should be sustained.

3  **E.     Plaintiffs' Fourteenth Claim for Aiding and Abetting Breach of**

4  **Fiduciary Duty Fails**

5       Plaintiffs' claim for aiding and abetting breach of fiduciary duty is based on

6  the same theory as Plaintiffs' aiding and abetting fraud claim and fails for the exact

7  same reasons discussed above.  (SAC ¶202, 208.) The alleged breach of fiduciary

8  duty at issue is, like Plaintiffs' other claims, based upon TWM, ACOF, and

9  ACPS's purported misstatements about an "optimized portfolio" and failures to

10  disclose TWM's fee agreements. (SAC ¶204, 208.) But once again, Plaintiffs' lack

11  of specificity dooms their claim. As instructed by the court in Casey, the precise

12  breach must be identified, and as previously discussed, Plaintiffs fail to get that far.

13  Casey, 127 Cal.App.4th at 1149. Instead, Plaintiffs only speak in terms of a vague

14  scheme to defraud, false assertions about an "optimized portfolio", and failures to

15  disclose revenue sharing agreements. (SAC ¶4, 5, 6, 13, 204, 208.) But again,

16  Plaintiffs' failure to allege the specific misstatements and omissions at issue, which

17  allegedly constitute the breach of fiduciary duty to Plaintiffs, make it impossible

18  for Plaintiffs to establish that Dionne knew of and provided substantial assistance

19  in carrying out the unspecified misstatements and omissions at issue.

20       Plaintiffs' general allegations that Dionne "knew" that TWM had revenue

21  sharing agreements, and that investors were not told about the agreements, are

22  insufficient to allege aiding and abetting liability. (SAC ¶67, 208.) Plaintiffs are

23  required to allege facts that demonstrate Dionne knew of the specific primary

24  violation—TWM, ACOF, and ACPS's misstatements and omissions about an

25  optimization plan and revenue sharing agreements. Casey, at 1152-53. But

26  nowhere do Plaintiffs allege how, why, or if Dionne had any type of knowledge

27  about the specific misstatements and omissions at issue. Nor could they, as the

28  SAC completely fails to specify how and in what manner Plaintiffs were misled.

KLINEDINST PC
501 WEST BROADWAY, SUITE 600
SAN DIEGO, CALIFORNIA  92101

1       Similarly, Plaintiffs' bare allegation that "defendants aided and abetted the

2 scheme by entering into the agreements and paying the fees and channeling the

3 plaintiffs to LJL, PPCN, and AEGIS" is insufficient to allege substantial assistance

4 by Dionne. Plaintiffs' allegation is conclusory and fails to describe in meaningful

5 detail how Dionne provided substantial assistance to TWM, ACOF, and ACPS in

6 carrying out the specific primary wrong—misleading Plaintiffs to believe their

7 funds would be invested pursuant to an "optimized portfolio" and failing to

8 disclose revenue sharing fees. (SAC ¶209); see *Casey*, 127 Cal.App.4th at 1145.

9       Moreover, Plaintiffs' vague allegations that Dionne gave substantial

10 assistance to the purported scheme by performing administrative and bookkeeping

11 services and by providing tax tips on the radio is equally unavailing. (SAC ¶66,

12 67.) As discussed above, Plaintiffs' allegations of Dionne's purported assistance

13 are of no help, where Plaintiffs have plainly failed to state the alleged failures to

14 disclose at issue. That is, how can Dionne assist (or have knowledge of)

15 misstatements and omissions where the misstatements and omissions are

16 completely unknown? The answer is, quite simply, he cannot. Plaintiffs' claim for

17 aiding and abetting breach of fiduciary duty fails.

18 **V.**   **CONCLUSION**

19       The San Diego Superior Court granted Dionne's previous demurrer for

20 similar reasons raised herein. Rather than address the court's concerns by pleading

21 specific facts demonstrating a real basis for liability by Dionne, Plaintiffs have

22 instead taken the transparent approach of tacking Dionne's name onto a list of

23 other defendants' names and claiming they all, somehow, in some unknown

24 fashion, engaged in a scheme to defraud Plaintiffs. But there are simply no facts

25 showing what the specific fraud, misrepresentation, or omissions were, when they

26 occurred and, most importantly, how Dionne had any knowledge, intent, or

27 involvement whatsoever. The SEC investigated this matter and took no action

28 against Dionne. Plaintiffs have taken their second bite at the apple and failed. This

KLINEDINST PC
501 WEST BROADWAY, SUITE 600
SAN DIEGO, CALIFORNIA 92101

Court should not grant them a third. Based on the above, Dionne respectfully requests the Court sustain his motion to dismiss without leave to amend.

KLINEDINST PC

DATED: July 29, 2015            By:  s/ Samuel B. Strohbehn
                                      Heather L. Rosing
                                      Samuel B. Strohbehn
                                      Jamie M. Ritterbeck
                                      Attorneys for Defendants
                                      MARK DIONNE; SOCAL
                                      ACCOUNTING, INC.

16309272v1

KLINEDINST PC
501 WEST BROADWAY, SUITE 600
SAN DIEGO, CALIFORNIA 92101

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF DEFENDANTS MARK DIONNE AND
SOCAL ACCOUNTING, INC.'S MOTION TO DISMISS PLAINTIFFS' SECOND AMENDED COMPLAINT
3:15-cv-1632-BAS-NLS