UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ALBERT CALDERON, an individual on behalf of himself and all others similarly situated, et al.,<br><br>                                    Plaintiffs,<br><br>v.<br><br>TOTAL WEALTH MANAGEMENT, INC., et al.<br><br>                                    Defendants. | Case No.:  15CV1632 BEN (NLS)<br><br>**ORDER GRANTING MOTIONS TO DISMISS**<br><br>[Docket Nos. 5, 26, 27] |

There are three separate motions to dismiss the Second Amended Complaint ("SAC") before the Court.[1]  The motions are fully briefed.  For the reasons set for below, each motion is **GRANTED**.  However, the Court grants Plaintiffs leave to amend as provided in this Order.

---

[1] On October 8, 2015, the Court denied Plaintiffs' Motion to Remand, but granted Plaintiffs' request for leave to conduct jurisdictional discovery and file a renewed motion to remand.  The Court delayed ruling on the pending motions to dismiss in anticipation of that motion.  However, the deadline to file that motion recently passed.

1

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

## BACKGROUND[2]

Plaintiffs allege that investors were solicited to invest in Total Wealth Management ("TWM") and its affiliated companies, Altus Capital Opportunity Fund, LLC ("ACOF") and Altus Capital Portfolio Series ("ACPS"), primarily through a weekly radio program, financial awareness seminars, and community engagement.  Investors were allegedly misled into believing their funds were being safely invested based on investment portfolio risk when in fact, investments were being channeled primarily to Private Placement Capital Notes LLC II ("PPCN"), LJL Secured High Yield Income Fund I, LLC ("LJL"), and Aegis Retail Group LLC ("AEGIS") in exchange for fees paid by the entities, without disclosure to investors.  TWM was allegedly under the control or direction of the following defendants by virtue of their ownership or positions as officers: Jacob Cooper, co-founder and majority owner of TWM; Nathan McNamee, TWM's president and chief compliance officer for relevant periods; David Shoemaker, co-founder and former chief compliance officer.

## DISCUSSION

"[A] complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 677-78 (2009).  "A claim is facially plausible 'when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged.'" *Zixiang Li v. Kerry*, 710 F.3d 995, 999 (9th Cir. 2013) (quoting *Iqbal*, 556 U.S. at 678).  When considering a Rule 12(b)(6) motion the court must "accept as true facts alleged and draw inferences from them in the light most favorable to the plaintiff." *Stacy v. Rederite Otto Danielsen*, 609 F.3d 1033, 1035 (9th Cir. 2010) (citing *Barker v. Riverside Cnty. Office of Educ.*, 584 F.3d 821, 824 (9th Cir. 2009)).

---

[2] The following overview of the facts are drawn from the allegations of the SAC.  The Court is not making findings of fact.  The allegations relevant to each motion are detailed in analyzing the individual motions.

2

1      Allegations of fraud must be stated with particularity.  Fed. R. Civ. P. 9(b).  "In

2  order to plead fraud with particularity, the complaint must allege the time, place, and

3  content of the fraudulent representation; conclusory allegations, do not suffice."  *Shroyer*

4  *v. New Cingular Wireless Serv., Inc.*, 622 F.3d 1035, 1042 (9th Cir. 2010) (citing *Moore*

5  *v. Kayport Package Express, Inc.*, 885 F.2d 531, 540 (9th Cir. 1989)); *Kearns v. Ford*

6  *Motor Co.*, 567 F.3d 1120, 1124 (9th Cir. 2009) (requiring plaintiffs plead who, what,

7  when, where, and how).  "Rule 9(b) does not allow a complaint to merely lump multiple

8  defendants together, but 'requires plaintiffs to differentiate their allegations when suing

9  more than one defendant . . . and to inform each defendant separately of the allegations

10  surrounding his alleged participation in the fraud."  *Swartz v. KPMG LLP*, 476 F.3d 759,

11  765 (9th Cir. 2007) (quoting *Haskin v. R.J. Reynolds Tobacco Co.*, 995 F. Supp. 1437,

12  1439 (M.D. Fla. 1998)).  "[G]eneral allegations that the 'defendants' engaged in

13  fraudulent conduct" with only specific allegations as to some, "patently fail[s] to comply

14  with Rule 9(b)."  *Id.* at 765.

15      The critical deficiency of the SAC as to the moving defendants is the absence of

16  allegations indicating what these defendants did.[3]  For example, how or when they made

17  any misrepresentation to the Plaintiffs or when they were obligated to disclose something

18  and failed to.  There are many conclusory and general allegations, relied on heavily in

19  Plaintiffs' oppositions, that "defendants" knew about or were involved in a fraudulent

20  scheme, but, when there are more than 30 named defendants it is almost impossible to

21  decipher what Plaintiffs allege the moving defendants, as opposed to TWM and its

22  officers did.  Even when a moving defendant is specifically named or listed as part of a

23  group of defendants that allegedly participated in or had knowledge of the fraudulent

24  scheme, itself a legal conclusion, there is little explanation how.

---

26  [3] The Court's analysis of the allegations of the claims and allegations of the SAC are limited to the
   moving defendants.  The Court's analysis of these Motions does not address and should not be
27  interpreted to apply to any of the other defendants.

**I.  Dionne and SoCal Accounting**

    **A.  Background**

The SAC alleges that Mark Dionne acted as the financial administrator and accountant for TWM, ACOF, ACPS, and other entities associated with Defendants Cooper, Shoemaker, and McNamee — Financial Council Inc. (Shoemaker); Capita Advisors Inc. (McNamee), and Pinnacle Wealth Group Inc. (Cooper).  The SAC alleges that Dionne was an insider, but does not allege he was an officer, director, or shareholder of TWM or any specific facts from which the Court can infer he controlled any of these entities.  He allegedly maintained the books, including the general ledger, expenses, financial statements, and statements as to equity.  He collected and disbursed funds to Defendants McNamee, Shoemaker, LJL, and AEGIS.  The SAC alleges that Dionne must have known certain facts based on his maintenance of the books, *i.e.* investments were being directed to PPCN, LJL, and AEGIS; that fees were being paid for the investments; and that the investments were riskier than represented.  The SAC additionally alleges that he did not disclose this information to investors.

Plaintiffs also generally allege that he promoted sales to investors, but the only specific allegations as to how Dionne promoted sales is that he gave "tax advice" on the TWM radio program.  However, the SAC does not allege that anything he said was false or misleading or even that he advised listeners to invest with TWM, ACOF, or ACPS.  The SAC generally alleges that he referred clients to TWM, ACOF, and ACPS without telling them undisclosed fees were being paid and he was aware of the adverse financial conditions of the LJL, PPCN, and AEGIS entities.  There are also general allegations that he assisted in the fraud, but no explanation of how or what he did to assist.

Dionne and SoCal Accounting, Inc. (collectively "Dionne") move to dismiss the five claims asserted against them in the SAC: (1) control of party making fraudulent sale

of securities in violation of California Corporations Code[4] §§ 25501, 25504; (2) materially assisting fraudulent sale of securities in violation of § 25504.1; (3) suppression of material fact in violation of California Civil Code § 1710; (4) aiding and abetting suppression of material fact; (5) aiding and abetting breach of fiduciary duty.

**B.    Analysis**

**1.    Control of Party Making Fraudulent Sale of Securities (§§ 25501, 25504)**

Plaintiffs assert that Dionne is liable for misrepresenting or omitting material facts in connection with the purchase or sale of a security in violation § 25501 as a secondary actor under § 25504.

> Under . . . section 25504 the following persons are jointly and severally liable for selling unqualified securities, with those who have engaged in the unlawful practice: "Every person who directly or indirectly controls a person liable under Section 25501 or 25503, every partner in a firm so liable, every principal executive officer or director of a corporation so liable, ... unless the other person who is so liable had no knowledge of or reasonable grounds to believe in the existence of the facts by reason of which the liability is alleged to exist."

*Hellum v. Breyer*, 194 Cal. App. 4th 1300, 1306 (1st Dist. 2011) (quoting § 25504). Plaintiffs summarily assert in their Opposition that they have "plead facts establishing that Mark Dionne controlled any person primarily liable for securities fraud," but does not identify who or explain how.  (Opp'n at 9.)  Plaintiffs argue the Court can draw the inference that Dionne had the power to control the general affairs of the entity that violated the securities law, presumably TWM, and was performing functions similar to TWM's treasurer, but there is little support for this conclusion in the allegations of the SAC.  Plaintiffs generally allege that Dionne and four other defendants associated with TWM,

---

[4] All further code section references are to the California Corporations Code unless otherwise noted.

5

1
2
3
4
5

> controlled TWM, ACOF, and ACPS through ownership, as officers,
> board of director members, as principal executive officers or directors,
> or as persons occupying a similar status or performing similar
> functions or as an employee of TWM, ACOF, or ACPS because they
> are employees who materially aided the acts or transactions
> constituting the violations.

6  (SAC ¶ 160.)[5]  Assuming a violation of § 25501 occurred, the SAC lacks allegations
7  from which the Court can infer that Dionne controlled anyone or any entity.  In contrast
8  to the allegations against other Defendants that founded and served as officers of TWM,
9  ACOF, or ACPS, the most the Court can infer from the allegations of the SAC is that
10 Dionne performed accounting work for these entities.  This claim is **DISMISSED** with
11 leave to amend.

12          **2.  Materially Assisting Fraudulent Sale of Securities (§ 25504.1)**

13         Plaintiffs also assert that Dionne is liable under § 25504.1 which "makes a person
14 jointly and severally liable for a violation of section 25401 if that person 'materially
15 assists in the violation of . . . Section 25401 . . . with the intent to deceive or defraud.'"
16 *Arei II Cases*, 216 Cal. App. 4th 1004, 1014 (1st Dist. 2013).  The material assistance
17 must be to "the scheme that constituted a violation of the securities laws" because the
18 underlying violation "is selling or offering to sell a security by means of false and
19 misleading statements."  *Id.* at 1014.  "[A]llegations demonstrating how the defendant
20 assisted in the act of selling or offering to sell securities by means of false and misleading
21 statements" are required.  *Id.* at 1015.  The SAC fails to allege how Dionne assisted in
22 selling or offering to sell securities by means of false and misleading statements.  Even if
23 the Court assumes that the investments promoted by other defendants qualified as selling

24
25
———————————————
26 [5] The Court considers these allegations, although, in asserting Dionne acted similar to a treasurer,
   Plaintiffs cited ¶¶ 168-171 of the SAC.  However, those allegations concern Defendants Lakosil and De
27 Villiers.

or offering to sell securities by means of false and misleading statements, as noted above, the only specific allegation that he promoted sales, was his appearance on a radio show to provide tax advice.  The allegations do not provide any explanation of how providing tax advice constitutes assistance in the ultimate investments.  Additionally, just knowing or having "reason to know the facts constituting the violation" is not enough for liability under § 25504.1.  *Id.* at 1015 (contrasting the liability for a broker-dealer under § 25504). It might be that Dionne's work ultimately was connected to a scheme, but "[a]ssisting in a violation is not the same as assisting someone achieve a violation, which can presumably be accomplished without having any involvement in the violation itself."  *Id.* at 1017.  This claim is **DISMISSED** with leave to amend.

### 3.  Suppression of Material Fact (California Civil Code § 1710)

California Civil Code § 1710, upon which Plaintiffs' claim relies, provides for four kinds of deceit, including concealment —"suppression of a fact, by one who is bound to disclose it, or who gives information of other facts which are likely to mislead for want of communication of that fact." § 1710(3) "The elements of an action for fraud and deceit based on concealment are: (1) the defendant must have concealed or suppressed a material fact, (2) the defendant must have been under a duty to disclose the fact to the plaintiff, (3) the defendant must have intentionally concealed or suppressed the fact with the intent to defraud the plaintiff, (4) the plaintiff must have been unaware of the fact and would not have acted as he did if he had known of the concealed or suppressed fact, and (5) as a result of the concealment or suppression of the fact, the plaintiff must have sustained damage."  *Marketing West, Inc. v. Sanyo Fisher (USA) Corp.*, 6 Cal. App. 4th 603, 612-13 (2d Dist. 1992).

Because Plaintiffs allege a course of fraudulent conduct, Plaintiffs must allege the "who, what, when, where, and how of the misconduct charged."  *Kearns v. Ford Motor Co.*, 567 F.3d 1120, 1124-25 (9th Cir. 2009).  In Opposition, Plaintiffs allege that Dionne was part of a group that induced people to invest by omitting material facts from TWM

communications that were directed to Plaintiffs.  However, the specific allegations as to Dionne are those discussed above — primarily radio appearances with tax advice and bookkeeping.  And the SAC's general allegation that Dionne, along with eight other defendants "engaged in unlawful conduct in violation of their duties to investors, agreed to join in the unlawful violation of duties owed investors, or aided and abetted those engaged in violations of their duties to investors" is a legal conclusion the Court need not accept as true.  *See Iqbal*, 556 U.S. at 678.  There are no particular allegations as to what he misrepresented, how he conveyed any misrepresentation, or when he should have disclosed something.  The remainder of the allegations noted in Opposition are attributed to TWM without specifics as to what Dionne did, when he did it, or how he did it.  Rule 9(b) does not permit "lump[ing] multiple defendants together."  *Swartz*, 476 F.3d at 765 ("[G]eneral allegations that the 'defendants' engaged in fraudulent conduct" with only specific allegations as to some, "patently fail[s] to comply with Rule 9(b).").  This claim is **DISMISSED** with leave to amend.

### 4.  Other Claims

Dionne moved to dismiss Plaintiffs' claims for aiding and abetting suppression of material fact and aiding and abetting breach of fiduciary duty.  Plaintiffs failed to address these claims in Opposition.[6]  Additionally, the SAC lacks any specific allegations how, when, or who Dionne aided and abetted.  Accordingly, these claims are **DISMISSED**.

## II. Andesite Defendants

### A.    Background

Defendants Andesite Finance Company, LLC, Secured High Yield Income Fund I, LLC, and Andesite Mortgage Pool, LLC ("Andesite entities"), and Susan Lakosil (collectively "Andesite Defendants") move to dismiss all claims asserted against them in

---

[6] The Court notes that Dionne committed five pages of briefing to these claims.  The Court can only conclude that Plaintiffs have conceded these claims are not viable as to Dionne.

8

the SAC: (1) fraudulent sale of securities under § 25401; (2) control of party making fraudulent sale of securities under §§ 25501 and 25504; (3) materially assisting fraudulent sale of securities; (4) materially assisting fraudulent sale of securities under § 25504.1; (5) suppression of material facts under Civil Code § 1710; (6) aiding and abetting suppression of material fact; and (7) aiding and abetting breach of fiduciary duty.

Lakosil allegedly served as an officer of or somehow otherwise oversaw the Andesite entities.  The SAC alleges that Plaintiffs' funds were invested in these funds and the Andesite Defendants paid fees to TWM and others in exchange for the investments that were undisclosed to Plaintiffs.[7]  There are general allegations that "defendants" were involved in a fraudulent scheme that led investors to believe the investments were safe when they allegedly were not and that "defendants" knew Plaintiffs did not know about the fees.  There are some allegations specific to the Andesite Defendants, including that Plaintiffs' funds were invested with the Andesite Defendants and allegations that representations were made about returns the entities provided.  However, there are no allegations as to who made these representations, when they were made, or even that those representations were inaccurate when made.  Additionally, there are no allegations that the Andesite Defendants directed the investment of Plaintiffs' funds.  Rather, the SAC alleges TWM and its principals directed Plaintiffs' investments.

Andesite Defendants move to dismiss all claims asserted against them

**B.    Analysis**

**1.   Fraudulent Sale of Securities (§ 25401)**

Section 25401 prohibits the offer or sale of a security "by means of any written or oral communication that includes an untrue statement of material fact or omits to state a material fact necessary to make the statements made, in light of the circumstances under

---

[7] Andesite Defendants dispute that any fees were paid, but understandably do not argue that as a basis for dismissing the claims given the Court must accept the truth of the factual allegations of the SAC at this stage.

1  which the statements were made, not misleading."  As noted above, the SAC fails to

2  identify what, if any, misrepresentation Andesite Defendants conveyed to Plaintiffs

3  concerning investments.  Additionally, the SAC does not identify when, where, or how

4  any representation was made.  Plaintiffs' conclusory allegation that "defendants" were

5  aware and failed to disclose fees to Plaintiffs is not sufficient. *See Swartz*, 476 F.3d at

6  765.  This claim is **DISMISSED** with leave to amend.

### 2.  Control of Party Making Fraudulent Sale of Securities (§§ 25501, 25504)

8  Plaintiffs assert that Lakosil controlled the Andesite entities such that she is liable

9  as a control person for their underlying violation.  As noted above, the SAC fails to

10  particularly plead a misrepresentation or omission connected with the sale or offer of a

11  security by the Andesite entities.  Lakosil cannot be liable as a control person for an

12  underlying violation that is not sufficiently alleged.  This claim is **DISMISSED** with

13  leave to amend.

### 3.  Materially Assisting Fraudulent Sale of Securities (§ 25504.1)

15  Plaintiffs' sixth and ninth causes of action assert that Andesite Defendants, among

16  others, are liable under § 25504.1.  "[A]llegations demonstrating how the defendant

17  assisted in the act of selling or offering to sell securities by means of false and misleading

18  statements" are required.  *Arei II Cases*, 216 Cal. App. 4th at 1015.  Assuming that the

19  investments promoted by other defendants qualified as selling or offering to sell

20  securities by means of false and misleading statements, this claim still fails as to Andesite

21  Defendants because there are no allegations how the Andesite Defendants assisted in that

22  endeavor.  There are only general allegations that they were aware of the fraudulent

23  scheme.  Additionally, as previously noted, having "reason to know the facts constituting

24  the violation" is not enough for liability under § 25504.1.  *Id.* at 1015.  These claims are

25  **DISMISSED** with leave to amend.

26  ///

27  ///

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

### 4.  Suppression of Material Fact (Civil Code § 1710)

As explained in more detail above, the SAC must allege a material fact that defendants were obligated to disclose was concealed or suppressed with the intent to defraud.  *Marketing West, Inc.*, 6 Cal. App. 4th at 612-13.  Plaintiffs must also allege that if they had been aware of the concealed fact they would have acted differently and have suffered damage as a result.  *Id.*  These allegations must be plead with particularity. *Kearns*, 567 F.3d at 1124-25.  Plaintiffs allege that Lakosil was part of a group that induced people to invest by omitting material facts from TWM communications that were directed to Plaintiffs.  However, there are no allegations connecting any of the Andesite Defendants to *TWM's* communications to Plaintiffs.  It is not clear why the Andesite Defendants should be responsible for TWM and its officer's alleged misrepresentations to Plaintiffs.  This claim is **DISMISSED** with leave to amend.

### 5.  Aiding and Abetting Suppression of Material Fact & Breach of Fiduciary Duty

Plaintiffs allege that all defendants aided and abetted all defendants because they knew the investments were not being invested pursuant to an optimization plan. Plaintiffs similarly generally allege that all defendants aided TWM, ACOF, and ACPS in breaching their fiduciary duties to Plaintiffs.  However, there are no allegations how the Andesite Defendants knew about the representations about an optimization plan or knew that others had made such a representation.  There are also no allegations as to how the Andesite Defendants assisted other defendants in misrepresenting the truth or concealing any information from the Plaintiffs.  As to aiding and abetting breach of fiduciary duty, there are no allegations as to how the Andesite Defendants assisted TWM, ACOF, and ACPS in breaching their fiduciary duties to the Plaintiffs.  These claims are **DISMISSED** with leave to amend.

///

///

15CV1632 BEN (NLS)

## III.  FTCO

As to FTCO, the SAC only alleges that FTCO was the previously unidentified Doe 1 and that it is a Kansas corporation.  Assuming the doe allegations apply to a now named defendant, those allegations are of little help. There are no specific allegations as to Doe 1.  The SAC generally alleges that Does 1-10 are accountants and bookkeepers who knowingly aided the violations of law as alleged in the SAC.  The SAC more generally alleges that all doe defendants are responsible for the conduct alleged in the SAC.  There are no allegations how FTCO is even connected to the Plaintiffs in any way.  FTCO provides more explanation of its connection to the case than the SAC, explaining in its Motion that it acted as a custodian of Plaintiffs' IRA accounts, *i.e.* held the assets that clients deposited and issued reports to clients on their holdings.

The Court will not go through all the elements of the claims[8] asserted against FTCO because there are no allegations against FTCO other than the legal conclusions noted above. *See Papasa v. Allain*, 478 U.S. 265, 286 (1986) ("we are not bound to accept as true a legal conclusion couched as a factual allegation"); *see also Iqbal*, 556 U.S. at 678.  Nor are the allegations sufficient to meet Rule 8's pleading requirements. *Iqbal*, 556 U.S. at 678 (Rule 8's notice pleading "demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation.").  The SAC does not allege what FTCO did or even what its connection is to the fraud allegedly committed by others.  This is apparent from Plaintiffs' reliance on allegations of conduct by other defendants in its Opposition, without any allegation or explanation as to how FTCO had anything to do with that conduct.  And, while FTCO indicates it held Plaintiffs' funds, this alone, is not actionable.  The "mere possibility of misconduct" falls short of the plausibility standard. *Id.*  Additionally, Plaintiffs' claims against FTCO are subject to Rule 9(b).  "In order to

---

[8] The Court assumes Plaintiffs are only asserting the eleventh and twelfth claims against FTCO given those are the only two claims addressed in Plaintiffs' Opposition.

plead fraud with particularity, the complaint must allege the time, place, and content of the fraudulent representation; conclusory allegations, [like those asserted here,] do not suffice." *Shroyer*, 622 F.3d at 1042 (citing *Moore*, 885 F.2d at 540).

All claims against FTCO are **DISMISSED** with leave to amend.

## CONCLUSION

The Motions to Dismiss are **GRANTED**.  Plaintiffs may amend as noted above on or before April 10, 2016.  If Plaintiffs elect not to amend, the case shall proceed on the SAC as to the remaining defendants.

**IT IS SO ORDERED.**

Dated:  March 9, 2016

Hon. Roger T. Benitez
United States District Judge

15CV1632 BEN (NLS)