FILED

NOV 29 2016

CLERK, U.S. DISTRICT COURT
SOUTHERN DISTRICT OF CALIFORNIA
BY _____ DEPUTY

UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ALBERT CALDERON, an individual on behalf of himself and all others similarly situated, et al., <br><br> Plaintiff, <br><br> v. <br><br> TOTAL WEALTH MANAGEMENT, Inc. et al., <br><br> Defendant. | Case No.: 3:15-cv-01632-BEN-NLS <br><br> **ORDER GRANTING DEFENDANT MAINSTAR TRUST'S MOTION TO DISMISS** <br><br> [Docket Nos. 60] |

Before this Court Defendant Mainstar Trust's motion to dismiss, or stay pending arbitration, the Third Amended Complaint ("TAC"). The motion is fully briefed. The Court finds the Motion suitable for determination on the papers without oral argument, pursuant to Civil Local Rule 7.1.d.1. For the reasons set for below, the motion is **GRANTED**.

///
///
///
///
///

# BACKGROUND[1]

Plaintiffs allege that investors were solicited to invest in Total Wealth Management ("TWM") and its affiliated companies, Altus Capital Opportunity Fund, LLC ("ACOF") and Altus Capital Portfolio Series ("ACPS"), primarily through a weekly radio program, financial awareness seminars, and community engagement. Investors were allegedly misled into believing their funds were being safely invested based on investment portfolio risk when in fact, investments were being channeled primarily to Private Placement Capital Notes LLC II ("PPCN"), LJL Secured High Yield Income Fund I, LLC ("LJL"), and Aegis Retail Group LLC ("AEGIS") in exchange for fees paid by the entities, without disclosure to investors.

Mainstar Trust ("Mainstar"), formerly named First Trust Company of Onaga ("FTCO"), is a trust company chartered in the State of Kansas. FTCO provided custodial services for various self-directed investment retirement accounts ("IRAs"), including Traditional, Roth, and other retirement trusts. Plaintiffs allege that, in July 2009, Defendant Cooper, through TWM, arranged to have FTCO serve as the IRA, Roth IRA, and Trust custodians for TWM's investment advisory investors, including Plaintiffs. Plaintiffs further allege that FTCO managers Jean Meyer and Jodi Weber agreed to a fee sharing arrangement with Cooper through TWM, whereby TWM provided FTCO with clients in exchange for monetary consideration, which are prohibited transactions under Internal Revenue Code § 4975.

Plaintiffs assert these facts give rise to claims against FTCO (now Mainstar) for: (1) suppression of material facts under Civil Code § 1710; (2) aiding and abetting suppression of material fact; and (3) aiding and abetting breach of fiduciary duty. Mainstar alleges some of the named Plaintiffs' claims are subject to a mandatory arbitration provision provided in each of the identified Plaintiff's IRA Custodian

---

[1] The following overview of the facts are drawn from the allegations of the TAC. The Court is not making findings of fact.

2

Agreement (collectively, "the IRA Agreements") with Mainstar[2]. (Mot. at 3:9-12.) The arbitration provisions state[3]:

> Arbitration of Claims: Any controversy arising out of or relating to this Agreement or the breach thereof, or to the IRA or any transaction authorized by you and/or your agent, shall be settled by arbitration in Johnson County, Kansas according to the rules of The American Arbitration Association. Arbitration is final and binding on the parties. The Parties are waiving their right to seek remedies in court, including the right to jury trial. The pre-arbitration discovery is generally more limited than and different from court proceedings.

(Mot. at 3:13-19, Docket Nos. 60-2 ¶ 10.) Plaintiffs do not dispute that the IRA Agreements contain an arbitration clause or discuss whether their claims are subject to the clause's provisions. Instead, Plaintiffs challenge the validity and/or enforceability of the IRA Agreements in their entirety.

## LEGAL STANDARD

Section 2 of the Federal Arbitration Act ("FAA") states that:

> A written provision in any ... contract evidencing a transaction involving commerce to settle by arbitration a controversy thereafter arising out of such contract or transaction ... shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract.

---

[2] In its Motion, Mainstar admits it had relationships with some, but not all, of the named Plaintiffs. Mainstar identified the Plaintiffs it had relationships with, and indicated it would be moving for summary judgment of the remaining claims asserted by non-relationship Plaintiffs in the near future. Plaintiffs did not challenge or discuss Mainstar's contention that some of the Plaintiffs have never had a relationship with Mainstar. Thus, the Court concludes Plaintiffs have conceded that not all Plaintiffs have a viable claim against Mainstar. The remainder of the Order shall address the claims against Mainstar by Plaintiffs who have or have had a relationship with Mainstar.

[3] The Court has reviewed Docket Nos. 60-2 through 60-6 and finds each of the agreements includes an arbitration clause that is identical, or nearly identical, to the arbitration clause in Docket No. 60-3.

1  9 U.S.C. § 2.  Section 2 demonstrates "'a national policy favoring arbitration' of claims
2  that parties contract to settle in that manner." *Preston v. Ferrer*, 552 U.S. 346, 352–53
3  (2008) (citing *Southland Corp. v. Keating,* 465 U.S. 1, 10 (1984)).
4         Under Section 3 of the FAA, where an issue involved in a suit or proceeding is
5  referable to arbitration under an agreement in writing, the district court "shall on
6  application of one of the parties stay the trial of the action until such arbitration has been
7  had in accordance with the terms of the agreement . . . ."  9 U.S.C. § 3.  The language is
8  mandatory, and district courts are required to order arbitration on issues as to which an
9  arbitration agreement has been signed.  *Kilgore v. KeyBank, N.A.*, 718 F.3d 1052, 1058
10 (9th Cir. 2013) (citing *Dean Witter Reynolds, Inc. v. Byrd*, 470 U.S. 213, 218 (1985)).
11 The role of the district court is "limited to determining (1) whether a valid agreement to
12 arbitrate exists and, if it does, (2) whether the agreement encompasses the dispute at
13 issue." *Chiron Corp. v. Ortho Diagnostic Sys., Inc.*, 207 F.3d 1126, 1130 (9th Cir. 2000).

## DISCUSSION

### I.  The Parties Must Arbitrate the Threshold Issue of Whether the IRA Agreements are Valid and Enforceable

17       Mainstar asserts Plaintiffs claims must be heard by an arbitrator, pursuant to the
18 arbitration clause of the IRA Agreements.  (Mot. at pp. 3-6.)  Plaintiffs contest the
19 validity of the IRA Agreements and argue that the arbitration clauses are not enforceable
20 because their consent to the IRA Agreements were obtained by fraud.  (Opp'n at pp. 8-9.)
21       Arbitration is a matter of contract, and a party "cannot be required to submit to
22 arbitration any dispute which he has not agreed so to submit." *Tracer Research Corp. v.*
23 *Nat'l Envtl. Servs. Co.*, 42 F.3d 1292, 1294 (9th Cir. 1994).  Courts must determine
24 whether there is an agreement to arbitrate before ordering arbitration.  *Wagner v. Stratton*
25 *Oakmont, Inc.*, 83 F.3d 1046, 1048 (9th Cir. 1996).  However, where a party challenges
26 the validity of an entire agreement containing an arbitration clause as the grounds for
27 avoiding arbitration, the determination of the validity of that agreement must first be
28 decided by an arbitrator.  *See Preston, supra,* 552 U.S. at 353-354 (citing *Buckeye Check*

*Cashing, Inc. v. Cardegna*, 546 U.S. 440, 446-448 (2006); *Prima Paint Corp. v. Flood & Conklin Mfg. Co.*, 388 U.S. 395, 403–404 (1967)) ("attacks on the validity of an entire contract, as distinct from attacks aimed at the arbitration clause, are within the arbitrator's ken.")

In their Opposition, Plaintiffs do not dispute Mainstar's contention that their contracts with Mainstar/FTCO evidence transactions involving commerce. Plaintiffs acknowledge that the IRA Agreements contained arbitration clauses, and do not challenge Mainstar's contention that said clauses included language stating that any controversies "arising out of or relating to this Agreement or the breach thereof, or to the IRA or any transaction authorized by you and/or your agent, shall be settled by arbitration . . . The Parties are waiving their right to seek remedies in court, including the right to jury trial." (Mot. at 3:13-19, Docket Nos. 60-2 ¶ 10, 60-3 ¶ 8.20.) Additionally, Plaintiffs did not directly address Mainstar's arguments that the arbitration clauses apply to the claims alleged in their Complaint.

Rather than attack the validity of the arbitration clauses as separate and apart from the IRA Agreements, Plaintiffs instead challenge the validity and enforceability of the IRA Agreements in their entirety. (Opp'n at pp. 8-9.) Put another way, Plaintiffs argue that the arbitration clauses are not enforceable because the IRA Agreements are not valid[4]. (*Id.*) Thus, it appears to the Court that the IRA Agreements contain arbitration clauses, which are "valid, irrevocable, and enforceable." 9 U.S.C. § 2. Accordingly, the Court is required to refer Plaintiffs' challenges to the validity of the IRA Agreements (and thus the arbitration clause itself) to arbitration pursuant to Sections 3 and 4 of the FAA. *See Preston, supra*, 552 U.S. at 353-354 (citations omitted). Plaintiffs must arbitrate the issue of whether the IRA Agreements are valid and enforceable.

///

---

[4] The Court concludes Plaintiffs concede that their claims would be covered by the scope of the arbitration clause if the IRA Agreements are valid and enforceable.

## II.     Whether the Case Should Be Stayed or Dismissed

Mainstar moves the Court to dismiss, rather than stay Plaintiffs' claims. However, if the Court declines to dismiss the claims, Mainstar moves the Court to stay the action pending arbitration. (Mot. at pp. 6-7.)

Under Section 3 of the FAA, a federal court is required to stay the trial of an action "on application of one of the parties to stay the trial of the action until such arbitration has been had in accordance with the terms of this agreement." 9 U.S.C. § 3. The Ninth Circuit has affirmed summary judgment of claims that are barred by an arbitration clause. *See Sparling v. Hoffman Const. Co.*, 864 F.2d 635, 638 (9th Cir. 1988) (citing *Martin Marietta Aluminum, Inc. v. General Electric Co.*, 586 F.2d 143 (9th Cir.1978)). Additionally, the Ninth Circuit has stated that a trial court may act *sua sponte* "to note the inadequacy of a complaint and dismiss it for failure to state a claim." *Id.*, quoting *Wong v. Bell*, 642 F.2d 359, 361 (9th Cir. 1981) (citations omitted). The court must give notice of its intention to dismiss and give the plaintiff some opportunity to respond unless the "[p]laintiffs cannot possibly win relief." *Id.*, citing *Wong*, 642 F.2d at 362.

In *Sparling*, the defendant moved for a stay pending arbitration of the plaintiffs' claims. *Id.* at 637. In their opposition to the defendant's motion, the plaintiffs argued that the arbitration clause did not apply because the plaintiffs were fraudulently induced to enter the contract. *Id.* at 638. The district court found the plaintiffs' claims were barred by the arbitration clause and dismissed the claims, even though the defendant had only requested a stay. *Id.* at 637-638. The plaintiffs appealed, arguing the district court's dismissal was improper because the defendant had only requested a stay, and because the court lacked discretion to dismiss their claims. *Id.*

On appeal, the Ninth Circuit first found the district court was not limited to ordering a stay because it was authorized to act on its own initiative to dismiss a complaint for failure to state a claim of a plaintiff. *Id.* at 638 (citations omitted). The Ninth Circuit determined the district court correctly found that the plaintiffs' fraud claims must be submitted to arbitration unless the arbitration clause itself was fraudulently

induced. *Id.*, citing *Prima Paint, supra*, 388 U.S. at 402–04. Since the plaintiffs did not claim that the arbitration clause itself was fraudulently induced, the court concluded that "the plaintiffs could not possibly win relief and the dismissal was appropriate even though it was on the court's own motion." *Id.* (citations omitted).

Second, the Ninth Circuit cited to its previous decision in *Martin Marietta, supra*, 586 F.2d 143, where it affirmed the district court's grant of summary judgment because the claims were barred by an arbitration clause. *Id.* The plaintiff in *Martin Marietta* had argued that Section 3 required the defendant to apply for a stay pending arbitration. The *Martin Marietta* court held that Section 3 gave a court authority to grant a stay pending arbitration (upon application by one of the parties), but did not preclude summary judgment "when all claims are barred by an arbitration clause." *Id.* Relying on this premise, the *Sparling* court found Section 3 also did not limit the court's authority to grant a dismissal. *Id.*

Here, similar to the plaintiffs in *Sparling*, Plaintiffs do not claim the arbitration clause itself was fraudulently induced, only that the entire IRA Agreements were fraudulently induced and thus invalid and unenforceable. (Opp'n at pp. 8-9.) As the Court noted above, Plaintiffs' Opposition did not argue that the arbitration clause would not apply to their claims if the IRA Agreements were valid and enforceable. Instead, Plaintiffs argued that "enforcing waiver of the plaintiffs' rights to a jury trial and the protection of their right to an Article 3 judge would be unconscionable." (Opp'n at 9:5-7.) Regardless, the Court must make its own determination in order to conclude whether a dismissal or stay is appropriate.

Plaintiffs' do not deny that the arbitration clauses state: "Any controversy arising out of or relating to this Agreement or the breach thereof, or to the IRA . . . shall be settled by arbitration . . . according to the rules of The American Arbitration Association." (Docket Nos. 60-3 to 60-6.) The Court notes that the scope of the arbitration clauses are broad, and extends to *all* controversies arising out of, or related to the agreement, *or* the IRA. (*Id.*) According to Plaintiffs' Complaint, their claims against

Mainstar for: (1) suppression of material facts under Civil Code § 1710; (2) aiding and abetting suppression of material fact; and (3) aiding and abetting breach of fiduciary duty stem from of Mainstar's role in serving as a custodian for their IRA accounts. (Compl. ¶¶ 243-260.) Thus, it appears that Plaintiffs' claims arise out of, or are related to the agreement or their IRA accounts, and the Court concludes Plaintiffs' claims are covered by the arbitration clause.

As a result, the Court finds Plaintiffs have failed to state a claim upon which relief may be granted. Plaintiffs' claims against Mainstar are subject to arbitration, as set forth in the IRA Agreements. Defendants' Motion to Dismiss is therefore **GRANTED**.

## CONCLUSION

For the reasons set forth above, the Court **GRANTS** Defendant Mainstar's Motion to Dismiss. The Motion to Stay Pending Arbitration is **VACATED** as moot. The claims against Mainstar are **DISMISSED**.

IT IS SO ORDERED.

DATED: 11/29, 2016

HON. ROGER T. BENITEZ
United States District Judge