FILED

17 JAN 19 PM 2:10

CLERK, U.S. DISTRICT COURT
SOUTHERN DISTRICT OF CALIFORNIA

BY: MXN        DEPUTY

# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ALBERT CALDERON, an individual on behalf of himself and all others similarly situated, et al.,<br><br>                    Plaintiffs,<br><br>v.<br><br>TOTAL WEALTH MANAGEMENT, INC. et. al,<br><br>                    Defendants. | Case No.: 3:15-cv-1632-BEN-NLS<br><br>**ORDER GRANTING MOTIONS TO DISMISS**<br><br>**[Docket Nos. 63, 65]** |

There are two separate motions to dismiss Plaintiffs' Third Amended Complaint ("TAC") before the Court. (Docket Nos. 63, 65.) The motions are fully briefed. The Court finds the motions suitable for determination on the papers without oral argument, pursuant to Civil Local Rule 7.1.d.1. For the reasons set forth below, each motion is **GRANTED with prejudice**.

///

///

///

///

///

1

## BACKGROUND[1]

Plaintiffs allege that investors were solicited to invest in Total Wealth Management ("TWM") and its affiliated companies, Altus Capital Opportunity Fund, LLC ("ACOF") and Altus Capital Portfolio Series ("ACPS"), primarily through a weekly radio program, financial awareness seminars, and community engagement.  Investors were allegedly misled into believing their funds were being safely invested based on investment portfolio risk when in fact, investments were being channeled primarily to Private Placement Capital Notes LLC II ("PPCN"), LJL Secured High Yield Income Fund I, LLC ("LJL"), and Aegis Retail Group LLC ("AEGIS") in exchange for fees paid by the entities, without disclosure to investors.  TWM was allegedly under the control or direction of the following defendants by virtue of their ownership or positions as officers: Jacob Cooper ("Cooper"), co-founder and majority owner of TWM; Nathan McNamee ("McNamee"), TWM's president and chief compliance officer for relevant periods; and David Shoemaker ("Shoemaker"), co-founder and former chief compliance officer.

## PROCEDURAL HISTORY

Plaintiffs filed their initial Complaint in the Superior Court of California, County of San Diego, Central Division, Case Number 37-2014-00015682-CU-SL-CTL.  On July 22, 2015, former Defendant First Trust Company of Onaga, renamed Mainstar Trust ("Mainstar"), removed the action to the United States District Court for the Southern District of California based on jurisdiction under the Class Action Fairness Act ("CAFA").  (Docket No. 1.)  On October 15, 2015, the Court denied Plaintiffs' motion to remand the case back to state court due to a lack of evidence establishing the applicability of either the "local controversy" or "home-state controversy" exceptions to CAFA jurisdiction.  (Docket No. 42.)

---

[1] The following overview of the facts are drawn from the allegations of the TAC.  The Court is not making findings of fact.  The allegations relevant to each motion are detailed in analyzing the individual motions.

2

1    On March 9, 2016, the Court granted three separate motions to dismiss Plaintiffs'

2  Second Amended Complaint.  (Docket No. 50.)  On March 16, 2016, Receiver Kristen A.

3  Janulewicz ("Receiver") filed a Notice of Pending Receivership regarding her

4  appointment as a permanent Receiver for Total Wealth Management Inc., and its

5  subsidiaries and affiliates, in *Securities and Exchange Commission v. Total Wealth*

6  *Management,* Case No. 15–cv–226–BAS (DHB) (the "Receivership Case").  (Docket No.

7  51.)  Receiver's Notice included a copy of District Judge Cynthia Bashant's preliminary

8  injunction, issued on February 12, 2015, which provides that:

9    [E]xcept by leave of this Court, during the pendency of this
10   receivership, all clients, investors, trust beneficiaries, note
     holders, creditors, claimants, lessors and all other persons or
11   entities seeking relief of any kind, in law or in equity, from
     Defendant Total Wealth Management, Inc., or its subsidiaries
12   or affiliates . . . are hereby restrained and enjoined from,
13   directly or indirectly, with respect to these persons and entities .
     . . commencing, prosecuting, continuing or enforcing any suit
14   or proceeding (other than the present action by the SEC or any
15   other action by the government) against any of them

16  (*Id.*, Ex. B.)

17    Plaintiffs filed their TAC on April 18, 2016.  (Docket No. 54.)  On May 2, 2016,

18  Mainstar filed a motion to dismiss the TAC.  (Docket No. 60.)  On May 5, 2016,

19  Defendants Andesite Finance Company, LLC, Secured High Yield Income Fund I, LLC,

20  and Andesite Mortgage Pool, LLC and Susan Lakosil (collectively, "Andesite

21  Defendants") filed a motion to dismiss the TAC.  (Docket No. 63.)  On May 19, 2016,

22  Defendants Mark Dionne and SoCal Accounting, Inc. (collectively, "Dionne") filed a

23  motion to dismiss the TAC.  (Docket No. 65.)

24    On November 29, 2016, the Court granted Mainstar's Motion to Dismiss.  (Docket

25  No. 75.)  On December 2, 2016, the Court issued an order requesting supplemental

26  briefing on: (1) whether the dismissal of Mainstar divested the Court of subject matter

27  jurisdiction over Plaintiffs' claims, and (2) the effect, if any, of Judge Bashant's

28  receivership order on Plaintiff's TAC.  (Docket No. 76.)  Plaintiffs and Dionne filed

1  supplemental briefs. (Docket Nos. 77, 80.) Andesite Defendants filed a joinder to
2  Dionne's brief. (Docket No. 79.) Receiver did not file a supplemental brief.

### DISCUSSION

**I.  The Court's Request for Supplemental Briefing**

   **A)  Subject Matter Jurisdiction**

6  If "at any time" the Court lacks subject matter jurisdiction, "the case shall be
7  remanded." 28 U.S.C. § 1447(c). As mentioned above, this case was removed by
8  Mainstar based on jurisdiction under CAFA. (Docket No. 1.) "CAFA gives federal
9  courts jurisdiction over certain class actions, defined in § 1332(d)(1), if the class has
10 more than 100 members, the parties are minimally diverse, and the amount in controversy
11 exceeds $ 5 million." *Dart Cherokee Basin Operating Co., LLC v. Owens*, 135 S. Ct.
12 547, 552 (2014) (citing 28 U.S.C. § 1332(d)(2), (5)(B) and *Standard Fire Ins. Co. v.*
13 *Knowles*, 133 S. Ct. 1345, 1348 (2013)).

14 None of the parties argue that any of these requirements are not met, or that
15 Mainstar's dismissal divested the Court of its subject matter jurisdiction. Instead,
16 Plaintiffs re-assert their contention that the "local controversy" exception to CAFA
17 jurisdiction applies and requires remand. (Docket No. 80.) All responding Defendants
18 oppose remand. (Docket Nos. 77, 79.)

19 When the requirements of the local controversy exception are met, a district court
20 is required to remand the class action back to the originating state court. *Serrano v. 180*
21 *Connect, Inc.*, 478 F.3d 1018, 1022-1023 (9th Cir. 2007). The local controversy
22 exception requires that more than two-thirds of the proposed class are citizens of the state
23 in which the action was originally filed. §§ 1332(d)(4)(A)(i)(I). In addition, "there must
24 ordinarily be at least some facts in evidence from which the district court may make
25 findings regarding class members' citizenship for purposes of CAFA's local controversy
26 exception." *Mondragon v. Capital One Auto Finance*, 736 F.3d 880, 884 (9th Cir. 2013).
27 "A district court makes factual findings regarding jurisdiction under a preponderance of

28

1   the evidence standard." *Id.* (citing *Valdez v. All State Ins. Co.*, 372 F.3d 1115, 1117 (9th
2   Cir. 2004)).

3        Plaintiffs' prior motion for remand was denied for a complete lack of evidence as
4   to the citizenship of the class. (Docket No. 42 at 4-5.) As "the party seeking remand,"
5   Plaintiffs "bear[] the burden to prove an exception to CAFA's jurisdiction." *Serrano*,
6   *supra*, 478 F.3d at 1022 (discussing local controversy exception, § 1332(d)(4)(A); *see*
7   *also Benko v. Quality Loan Serv. Corp.*, 789 F.3d 1111, 1116 (9th Cir. 2015) ("plaintiff
8   bears burden of showing that this provision, known as the 'local controversy exception,'
9   applies to the facts of a given case."). Plaintiffs were granted leave to conduct
10  jurisdictional discovery and file a renewed motion for remand by January 6, 2016.
11  (Docket No. 42 at 7.) The deadline to file a renewed motion for remand elapsed without
12  the filing of a renewed motion for remand, and Plaintiffs admit in their supplemental
13  briefing that "jurisdictional discovery was not taken." (Docket No. 80 at 2.)

14       As alleged in the TAC, the proposed class is "TWM's investment advisory clients
15  whose funds were placed in or passed through TWM, ACOF or the series of unregistered
16  fund of funds referred to as the 'Altus Portfolio Series' who suffered damages." (TAC ¶
17  149.) To establish the requisite citizenship of the class, Plaintiffs rely on the SEC Initial
18  Decision and factual findings in the SEC case against TWM et al., and copies of emails
19  from Mainstar's counsel. (Docket No. 80 at 3, Exs. 3, 5.) Plaintiffs cite to the SEC
20  findings that "Cooper and Shoemaker identified potential investors by hosting workshops
21  and dinner seminars in . . . San Diego, California" and that Cooper "obtained clients form
22  hosting a radio show in San Diego" as evidence that TWM "marketed only to investors in
23  San Diego." (Docket 80 at 3, Ex. 3 at 3.) Plaintiffs also represent that a number of
24  emails from Mainstar's counsel "demonstrate that the majority of investors were from
25  California." (Docket No. 80 at 3.) Finally, Plaintiffs reiterate that all named plaintiffs
26  are alleged to be "residents of San Diego County." (*Id.*)

27       "[J]urisdictional findings of fact should be based on more than guesswork."
28  *Mondragon*, 736 F.3d at 884. Plaintiffs have not cured their failure to provide any

1  evidence as to the *citizenship* of the proposed class.  The evidence submitted suggests at
2  most that some of the potential class members were contacted in California or are "from"
3  California, but does not identify the *citizenship* of any of the class members.  Mainstar's
4  Notice of Removal provides evidence that Defendants had between 400 and 800 clients
5  when they were engaging in this scheme.  (Docket No. 1.)  Although the TAC alleges the
6  27 named plaintiffs are "*residents* of the State of California, County of San Diego," it is
7  silent as to each of their *citizenships*.  While the Court may make reasonable inferences
8  from facts in evidence when evaluating the applicability of the local controversy
9  exception, concluding that more than two-thirds of a class of hundreds are California
10 *citizens* based on allegations that: (1) plaintiffs were contacted by some of the defendants
11 in California, (2) plaintiffs are "from" California, and (3) the 27 named plaintiffs are
12 *residents* of the State of California, is not a reasonable inference.  Therefore, the Court
13 finds Plaintiffs have failed to meet their burden to demonstrate that the local controversy
14 exception applies and **DENIES** their request for remand.

15       **B)**    **Judge Bashant's Receivership Order**

16       All of the responding parties agree that the moving Defendants are not subject to
17 the receivership order and are not subject to Judge Bashant's preliminary injunction.
18 (Docket Nos. 77 at 5-6, 79 at 2, 80 at 4.)  Receiver did not file a supplemental brief.
19 Additionally, the Declaration that Receiver filed with her Notice of Pending Receivership
20 omits any identification of Dionne or Andesite Defendants as affiliates of Total Wealth
21 Management.  (Docket No 51-2, Exhibit 1.)  The Court concludes that the prosecution of
22 this action as to Dionne and the Andesite Defendants does not violate the injunction
23 issued by the Honorable Cynthia Bashant in Case No. 15–cv–226–BAS (DHB).

24 **II.**    **The Motions to Dismiss**

25       "[A] complaint must contain sufficient factual matter, accepted as true, to state a
26 claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 677-78
27 (2009).  "A claim is facially plausible 'when the plaintiff pleads factual content that
28 allows the court to draw the reasonable inference that the defendant is liable for the

1 misconduct alleged.'" *Zixiang Li v. Kerry*, 710 F.3d 995, 999 (9th Cir. 2013) (quoting

2 *Iqbal*, 556 U.S. at 678).

3      When considering a Rule 12(b)(6) motion the court must "accept as true facts

4 alleged and draw inferences from them in the light most favorable to the plaintiff." *Stacy*

5 *v. Rederite Otto Danielsen*, 609 F.3d 1033, 1035 (9th Cir. 2010) (citing *Barker v.*

6 *Riverside Cnty. Office of Educ.*, 584 F.3d 821, 824 (9th Cir. 2009)).  On the other hand,

7 bare, conclusory allegations, including legal allegations couched as factual, are not

8 entitled to be assumed to be true. *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555

9 (2007).  "[T]he tenet that a court must accept as true all of the allegations contained in a

10 complaint is inapplicable to legal conclusions." *Iqbal,* 556 U.S. at 678.  "While legal

11 conclusions can provide the framework of a complaint, they must be supported by factual

12 allegations." *Id.* at 664.

13      Allegations of fraud must be stated with particularity. Fed. R. Civ. P. 9(b).  "In

14 order to plead fraud with particularity, the complaint must allege the time, place, and

15 content of the fraudulent representation; conclusory allegations, do not suffice." *Shroyer*

16 *v. New Cingular Wireless Serv., Inc.*, 622 F.3d 1035, 1042 (9th Cir. 2010) (citing *Moore*

17 *v. Kayport Package Express, Inc.*, 885 F.2d 531, 540 (9th Cir. 1989)); *Kearns v. Ford*

18 *Motor Co.*, 567 F.3d 1120, 1124 (9th Cir. 2009) (requiring plaintiffs plead who, what,

19 when, where, and how).  "Rule 9(b) does not allow a complaint to merely lump multiple

20 defendants together, but 'requires plaintiffs to differentiate their allegations when suing

21 more than one defendant . . . and to inform each defendant separately of the allegations

22 surrounding his alleged participation in the fraud." *Swartz v. KPMG LLP*, 476 F.3d 759,

23 765 (9th Cir. 2007) (quoting *Haskin v. R.J. Reynolds Tobacco Co.*, 995 F. Supp. 1437,

24 1439 (M.D. Fla. 1998)).  "[G]eneral allegations that the 'defendants' engaged in

25 fraudulent conduct" with only specific allegations as to some, "patently fail[s] to comply

26 with Rule 9(b)." *Id.* at 765.

27      As pointed out by Dionne, Plaintiffs failed to provide a copy of the TAC that

28 shows "through redlining, underlining, strikeouts, or other similarly effective typographic

1  methods" how the TAC differs from the Second Amended Complaint ("SAC") as
2  required by CivLR 15.1(c). Although the Court has discretion to dismiss the TAC on this
3  basis, in the interests of judicial economy, the Court has reviewed Plaintiffs' TAC[2] and
4  makes its findings after careful consideration of the parties' briefings.

5  The Court finds the TAC fails to remedy the deficiencies the Court identified in the
6  SAC as to the moving defendants.[3] Plaintiffs' TAC provides more legal conclusions and
7  general allegations that the moving "defendants" knew about or were involved in a
8  fraudulent scheme involving more than 30 named defendants, but did not plead specific
9  factual allegations as to what Plaintiffs allege the moving defendants actually did to
10  engage in the alleged wrongful conduct.

11      **1)   Mark Dionne and SoCal Accounting**
12          **A.   Background[4]**

13  The TAC alleges that "Cooper hired Dionne in and around May 2009 to work as
14  the accountant and financial administrator" for TWM. (TAC ¶ 179.) Mr. Dionne is also
15  alleged to have acted as the financial administrator and accountant for, ACOF, ACPS,
16  and other entities associated with Defendants Cooper, Shoemaker, and McNamee —
17  Financial Council Inc. (Shoemaker), Capita Advisors Inc. (McNamee), and Pinnacle
18  Wealth Group Inc. (Cooper).

19
20
21

---

22  [2] The Court notes that paragraphs 1-153 and 154-209 of the TAC are substantively
23  identical, if not verbatim copies, of paragraphs 1-153 and 261-316, respectively, in
    Plaintiffs' SAC. Plaintiffs' amendments to the SAC are purportedly contained in
24  paragraphs 154-260. (TAC ¶ 154.)
25  [3] The Court's analysis of the allegations of the claims and allegations of the TAC are
    limited to the moving defendants. The Court's analysis of these Motions does not
26  address and should not be interpreted to apply to any of the other defendants.
27  [4] Due to the substantial similarity of the facts alleged in the SAC and the TAC, the Court
28  repeats some of the summary of facts set forth in its March 9, 2016 Order granting
    dismissal of Plaintiffs' SAC. (Docket No. 50.)

1    Once again, Plaintiffs allege Mr. Dionne was an insider, but do not allege he was
2    an officer, director, or shareholder of TWM or any specific facts from which the Court
3    can infer he *controlled* any of these entities.  Instead, the TAC alleges Cooper "explained
4    [to Mr. Dionne] that TWM would be inducing investors to transfer their funds to TWM's
5    control and how the scheme, described above, worked."  (TAC ¶ 180.)  Mr. Dionne
6    allegedly had "control over TWM's financial books and records" and "managed the
7    financial records for the spoke entities that too [sic] investor money and used it to pay for
8    the unlawful revenue sharing, bogus fees and receive the kickbacks."  (TAC ¶¶ 180, 181.)
9    Further, Mr. Dionne is generally alleged to be the "common thread of the fraudulent
10   scheme."  (*Id.* at 187.)  None of these facts leads to a reasonably inference that Mr.
11   Dionne exerted control over TWM or its affiliated entities.

12       The TAC alleges Mr. Dionne must have known certain facts based on his
13   maintenance of the books (*i.e.* investments were being directed to PPCN, LJL, and
14   AEGIS; that fees were being paid for the investments; and that the investments were
15   riskier than represented), but did not disclose this information to investors.

16       Plaintiffs also generally allege that Mr. Dionne promoted sales to investors, but the
17   only specific allegations as to how Dionne promoted sales is that he gave "tax advice" on
18   the TWM radio program.  (*Id.* at ¶ 67.)  However, the TAC does not allege that anything
19   he specifically said was false or misleading.  The TAC contains general allegations that
20   he assisted in the fraud, but no explanation of how or what he did to actually assist.

21       The TAC further generally alleges Mr. Dionne "was integrally involved in the
22   representations to investors, including Plaintiffs," but the only specific example is an
23   excerpt of an alleged email from McNamee stating:

24           Mark,

25           The Disclaimer on page 1 says Altus Capital Opportunity Fund.
26           Can you change the Disclaimer on page 1 to say the following?

27

28

(*Id.* at ¶ 192.)  Plaintiffs allege "a similar request to perform disclaimers was sent by McNamee" to Mr. Dionne relating to AMGPS, but do not allege any specifics as to what he actually represented to Plaintiffs that was misleading.

Additionally, the TAC generally alleges that Mr. Dionne referred clients to TWM, ACOF, and ACPS without telling them undisclosed fees were being paid and he was aware of the adverse financial conditions of the LJL, PPCN, and AEGIS entities.  To Plaintiff Clugston, Mr. Dionne allegedly "promoted investing TWM [sic]" and "recommending he take out a $400,000 loan on his house and invest it with TWM." (*Id.* at ¶ 203.)  To Plaintiff McKinney, Mr. Dionne allegedly "promoted TWM" and advised her to "switch all of [her] retirement investment money over to [TWM/Cooper]." (*Id.* at ¶ 205.)  To Plaintiffs Cartier and Green, Mr. Dionne allegedly "gave specific advice" about their IRA investments, which were invested with TWM. (*Id.* at ¶ 207.)  However, Plaintiffs do not allege what Dionne stated to promote TWM or advise use of TWM that was misleading.

Lastly, Plaintiffs generally allege Mr. Dionne assisted in the selling or offering of securities "by being part of the 'Asset Optimization' team described by TWM as including professionals such as tax advisers" and assisting "TWM and its principals achieve a violation . . . of securities laws." (TAC ¶ 214.)  Once again, Plaintiffs fail to allege what Mr. Dionne did to assist in the sales or achieve the violations.

Mr. Dionne and SoCal Accounting move to dismiss the five claims asserted against them in the TAC: (1) control of party making fraudulent sale of securities in violation of California Corporations Code[5] §§ 25501, 25504; (2) materially assisting fraudulent sale of securities in violation of § 25504.1; (3) suppression of material fact in violation of California Civil Code § 1710; (4) aiding and abetting suppression of material fact; (5) aiding and abetting breach of fiduciary duty.

---

[5] All further code section references are to the California Corporations Code unless otherwise noted.

10

**B.    Analysis**

1. <u>Control of Party Making Fraudulent Sale of Securities (§§ 25501, 25504)</u>

In the TAC's Second Claim for Relief, Plaintiffs assert that Mr. Dionne is liable for misrepresenting or omitting material facts in connection with the purchase or sale of a security in violation § 25501 as a secondary actor under § 25504.

> Under . . . section 25504 the following persons are jointly and severally liable for selling unqualified securities, with those who have engaged in the unlawful practice: "Every person who directly or indirectly controls a person liable under Section 25501 or 25503, every partner in a firm so liable, every principal executive officer or director of a corporation so liable, ... unless the other person who is so liable had no knowledge of or reasonable grounds to believe in the existence of the facts by reason of which the liability is alleged to exist."

*Hellum v. Breyer*, 194 Cal. App. 4th 1300, 1306 (1st Dist. 2011) (quoting § 25504). Plaintiffs' TAC repeats the general allegation that Mr. Dionne and four other defendants associated with TWM,

> controlled TWM, ACOF, and ACPS through ownership, as officers, board of director members, as principal executive officers or directors, or as persons occupying a similar status or performing similar functions or as an employee of TWM, ACOF, or ACPS because they are employees who materially aided the acts or transactions constituting the violations.

(TAC ¶ 267.) Plaintiffs conclude that they "cured [the] perceived deficiencies" in the SAC by including new allegations regarding Mr. Dionne's activity in (1) controlling and maintaining TWM's and its affiliated entities' financial records, and (2) "working with Cooper, McNamee and Fowler to make representations to investors and do internal transfers and payments between the accounts." (Docket No. 69 at 15-17.) Plaintiffs argue that "[f]rom these allegations showing Dionne managed the bank and fund accounts and books of original entry, the Court can infer Dionne acted as TWM's

11

1   treasurer and that Dionne was a person who controlled these persons and their entities."

2   (*Id.* at 17.)

3        Once again, assuming a violation of § 25501 occurred, there is simply a lack of

4   evidence alleged from which the Court can infer Dionne's control over any person or any

5   entity.   The new allegations, at most, further support an inference that Mr. Dionne

6   performed accounting work for the entities identified in the TAC.  Therefore, this claim is

7   **DISMISSED**.

8                2.  <u>Materially Assisting Fraudulent Sale of Securities (§ 25504.1)</u>

9        In the TAC's Seventh Claim for Relief, Plaintiffs assert that Dionne is liable under

10  § 25504.1, which "makes a person jointly and severally liable for a violation of section

11  25401 if that person 'materially assists in the violation of . . . Section 25401 . . . with the

12  intent to deceive or defraud.'"  *Arei II Cases*, 216 Cal. App. 4th 1004, 1014 (1st Dist.

13  2013).  The material assistance must be to "the scheme that constituted a violation of the

14  securities laws" because the underlying violation "is selling or offering to sell a security

15  by means of false and misleading statements."  *Id.* at 1014.  "[A]llegations demonstrating

16  how the defendant assisted in the act of selling or offering to sell securities *by means of*

17  *false and misleading statements*" are required.  *Id.* at 1015 (emphasis added).

18       In their Opposition, Plaintiffs argue they have sufficiently pled a violation of

19  section 25401 by pointing to the portions of the TAC where it alleges:

20              Dionne performed the function of treasurer, controlling TWM
21              bank accounts, check writing, internal transfers between funds,
                financial statement and general ledger preparation, and reports
22              as requested or needed in the scope of the TWM scheme.  (TAC
23              ¶ 212[.])  Dionne assisted in selling or offering securities by
                being part of the "Asset Optimization" team described by TWM
24              as including professionals such as advisers.  He assisted TWM
                and its principals achieve a violation (not just assist the
25              violation) of securities laws . . . (TAC ¶ 213[.])
26

27  (Docket No. 69 at 18-19.)

28

                                    12

1    Plaintiffs summarily conclude that, on these facts, "Dionne's representations to
2    plaintiff investors fail to state facts needed to make those stated not misleading." (*Id.* at
3    19.) However, Plaintiffs' TAC fails to set forth specific allegations as to how Dionne
4    assisted in selling or offering to sell securities *by means of false and misleading*
5    *statements.*[6] *Arei II Cases*, 216 Cal. App. 4th at 1015. The only specific allegations in
6    the TAC that Dionne promoted sales are his appearance on a radio show to provide tax
7    advice, and his "promoting" of TWM to his tax clients. However, the allegations do not
8    provide any explanation of how providing tax advice constitutes assistance in the ultimate
9    investments. Additionally, although the TAC alleges Mr. Dionne specifically promoted
10   TWM to Plaintiffs Clugston, McKinney, Cartier, and Green, the allegations are deficient
11   because they fail to specifically allege what Mr. Dionne said to "promote" or "advise"
12   that was misleading. Alleging a person promotes or advises use of an investment
13   company does not, in it of itself, constitute fraud under the heightened pleading standards
14   of Fed. R. Civ. P. 9(b). Plaintiffs must at least specify statements they claim were
15   misleading. Fed. R. Civ. P. 9(b).

16   Lastly, the Court reiterates that just knowing or having "reason to know the facts
17   constituting the violation" is not enough for liability under § 25504.1. *Arei II Cases*, 216
18   Cal. App. 4th at 1015 (contrasting the liability for a broker-dealer under § 25504). It
19   might be that Dionne's work ultimately was connected to a scheme, but "[a]ssisting in a
20   violation is not the same as assisting someone achieve a violation, which can presumably
21   be accomplished without having any involvement in the violation itself." *Id.* at 1017.
22   This claim is **DISMISSED**.

23   ///
24   ///

25

26

---

27   [6] This is particularly true when reviewing the portions of the TAC where Plaintiffs'
28   specify the alleged misleading statements attributable to Andesite Defendants. (TAC ¶¶
     223-229.)

13

1       ### 3. Suppression of Material Fact (California Civil Code § 1710)

2       In the TAC's Eleventh Claim for Relief, Plaintiffs allege Dionne violated

3   California Civil Code section 1710.  Section 1710 defines the elements of actionable

4   deceit and provides for four kinds of deceit, including concealment – "suppression of a

5   fact, by one who is bound to disclose it, or who gives information of other facts which are

6   likely to mislead for want of communication of that fact." § 1710(3)  "The elements of

7   an action for fraud and deceit based on concealment are: (1) the defendant must have

8   concealed or suppressed a material fact, (2) the defendant must have been under a duty to

9   disclose the fact to the plaintiff, (3) the defendant must have intentionally concealed or

10  suppressed the fact with the intent to defraud the plaintiff, (4) the plaintiff must have been

11  unaware of the fact and would not have acted as he did if he had known of the concealed

12  or suppressed fact, and (5) as a result of the concealment or suppression of the fact, the

13  plaintiff must have sustained damage." *Marketing West, Inc. v. Sanyo Fisher (USA)*

14  *Corp.*, 6 Cal. App. 4th 603, 612-13 (2d Dist. 1992).

15      Plaintiffs allege Dionne engaged in a course of fraudulent conduct and therefore

16  must allege the "who, what, when, where, and how of the misconduct charged." *Kearns*

17  *v. Ford Motor Co.*, 567 F.3d 1120, 1124-25 (9th Cir. 2009).  In Opposition, Plaintiffs

18  generally assert:

19          The TAC describes Dionne's role on TWM's radio program,
            making representations as their tax arm.  Dionne made
20          misrepresentations by failing to disclose what was needed to
21          make that stated not misleading, namely the unlawful revenue
            sharing, kickbacks, payments made from investor funds to
22          TWM principals and affiliates with no supporting
23          documentation for services performed for those payments.

24

25  (Docket No. 69 at 20.)  However, the TAC does not contain any particular allegations as

26  to what Dionne misrepresented, how he conveyed any misrepresentation, or when he

27  should have disclosed something.  Similarly, Plaintiffs' Opposition contends Dionne had

28  a "legal duty" to disclose "the material facts about the fund and kickbacks" to Plaintiffs

1  because "when a party choses [sic] to speak, the speaker has duty to not only tell the

2  truth, but also not to suppress or conceal [material] facts." (*Id.*)  Yet Plaintiffs do not

3  specify what it is that Dionne said that gave rise to a duty to disclose the alleged

4  "material facts about the fund and kickbacks." (*Id.*)  Simply put, the TAC lacks any

5  specific allegations of actionable statements attributable to Dionne, for which he then

6  suppressed material facts.

7       Moreover, Plaintiffs failed to address Dionne's argument that the TAC fails to

8  sufficiently plead the requisite elements of intent and reliance.  The Court concludes

9  Plaintiffs concede the TAC lacks specific allegations that Dionne acted with the intent to

10  defraud Plaintiffs as well as allegations that Plaintiffs relied on the allegedly omitted

11  information. *Marketing West,* 6 Cal. App. 4th at 612-13 (2d Dist. 1992).  Therefore, this

12  claim is **DISMISSED**.

13                        4. Aiding and Abetting Claims

14       Dionne moved to dismiss Plaintiffs' claims for aiding and abetting suppression of

15  material fact and aiding and abetting breach of fiduciary duty.  Plaintiffs failed to address

16  these claims in Opposition.[7]  Moreover, the TAC does not include any specific

17  allegations as to how, when, or who Dionne aided and abetted.  Accordingly, these claims

18  are **DISMISSED**.

19       **2)**    **Andesite Defendants**

20       **A.**    **Background**[8]

21       The TAC alleges TWM and LJL "have had a close relationship from their

22  inceptions" and conducted business out of the same office suite. (TAC ¶ 219.)  Ms.

23

24

25  [7] The Court notes that Dionne devoted over five pages of briefing to these claims.  The

26  Court can only conclude that Plaintiffs have, once again, conceded these claims are not viable as to Dionne, or acknowledge they should have sought leave to amend their

27  complaint to re-allege these claims. *See* Fed. R. Civ. P. 15; CivLR 15.1; Docket No. 50 at 8.

28  [8] *See* Footnote 4, above.

1   Lakosil allegedly served as an officer of or somehow otherwise oversaw the Andesite
2   entities.  Beginning in 2008, TWM and Andesite Defendants allegedly entered into a
3   revenue sharing agreement, whereby Plaintiffs' funds were invested in these funds and
4   Andesite Defendants paid fees to TWM and others in exchange for the investments that
5   were undisclosed to Plaintiffs.

6        The TAC repeats the same general allegations in the SAC that "defendants" were
7   involved in a fraudulent scheme that led investors to believe the investments were safe
8   when they allegedly were not and that "defendants" knew Plaintiffs did not know about
9   the fees.  The TAC also repeats the allegations specific to the Andesite Defendants,
10  including that TWM invested Plaintiffs' funds with Andesite entities and allegations that
11  representations were made about returns the Andesite entities provided.

12       The new allegations in the TAC assert that LJL's website stated that its "seamless
13  operations and lending philosophy mirror traditional mortgage banking platforms," and
14  that "if the 'real estate market totally tanks' due to a 'catastrophic drop' – investments
15  with LJL would 'remain relatively unscathed.'"  (TAC ¶¶ 223-224) (emphasis omitted.)
16  Plaintiffs further allege that Andesite Defendants made a false statement in their Form
17  ADV – Uniform Application for Investor Adviser Registration, dated August 12, 2010,
18  when they stated "they 'may' pay introductory fees'" because they failed to disclose the
19  revenue sharing agreement with TWM.  (*Id.* at 228.)  Additionally, Plaintiffs' allege
20  Andesite Defendants "assisted with TWM Defendants' fraudulent scheme by, among
21  other things, preparing a series of brochures and other documents."  (*Id.* at 229.)

22       However, Plaintiffs' TAC lacks factual allegations that Plaintiffs relied on
23  Andesite Defendants' statements, or that the statements were made with the intent to
24  defraud Plaintiffs.  Moreover, as in the SAC, there are no allegations that the Andesite
25  Defendants directed the investment of Plaintiffs' funds.  Instead, the TAC alleges TWM
26  and its principals directed Plaintiffs' investments.

27       The Andesite Defendants move to dismiss all claims asserted against them in the
28  TAC: (1) fraudulent sale of securities under § 25401; (2) control of party making

1  fraudulent sale of securities under §§ 25501 and 25504; (3) materially assisting

2  fraudulent sale of securities; (4) materially assisting fraudulent sale of securities under §

3  25504.1; (5) suppression of material facts under Civil Code § 1710; (6) aiding and

4  abetting suppression of material fact; and (7) aiding and abetting breach of fiduciary duty.

5  **B.   Analysis**

6  1. Fraudulent Sale of Securities (§ 25401)

7  In the TAC's First Claim for Relief, Plaintiffs allege Andesite Defendants violated

8  Section 25401, which prohibits the offer or sale of a security "by means of any written or

9  oral communication that includes an untrue statement of material fact or omits to state a

10  material fact necessary to make the statements made, in light of the circumstances under

11  which the statements were made, not misleading."

12  Plaintiffs argue that the TAC at paragraphs 223, 225, 226-229, 234- 238 and 240

13  alleges "a series of false statements that the LJL/Andesite Defendants made directly to

14  Plaintiffs – in order to promote and advance the fraudulent scheme." (Docket No. 68 at

15  7.) After reviewing the cited paragraphs, the Court finds only the following paragraphs

16  allege specific statements attributable to Andesite Defendants:

17  - TAC ¶ 223: "LJL falsely told the public on their website (as of 2008) that, "our

18  seamless operations and lending philosophy mirror traditional mortgage banking platforms."

19  - TAC ¶ 225: Andesite Defendants "falsely told investors in marketing materials

20  that it could earn 'FIVE TIMES the return of a traditional CD without five times the risk' because their 'secured fund' is akin to 'a long term CD' which

21  could be used to 'wait out the uncertainty in the market.'"

22  - TAC ¶ 228: Andesite Defendants "made false statements in their Form ADV –

23  Uniform Application for Investor Adviser Registration, dated August 12, 2010 – by failing to disclose the revenue sharing agreement with TWM and instead

24  stating that they 'may pay introductory fees.'"

25  (TAC ¶¶ 223, 225, 228) (emphasis omitted.) The Court does not agree that these

26  statements demonstrate a claim under Section 25401. First, each of these statements

27  describes qualities of the *Andesite* entities, not TWM. Yet nowhere in the TAC do

28  Plaintiffs allege they were fraudulently induced into investing their money with the

17

1 | *Andesite* entities, or that any Plaintiffs invested money with *Andesite Defendants*. In fact,

2 | the TAC solely alleges Andesite Defendants assisted in inducing Plaintiffs to invest their

3 | money with *TWM* and its entities. (*See* TAC ¶¶ 36-205, 229.) Second, other than general

4 | allegations that "Plaintiffs relied on the information they received from the defendants,"

5 | the TAC does not allege Plaintiffs relied on the above-referenced statements in

6 | connection with an offer or sale of a security.

7 | In addition, the TAC states that Andesite Defendants "reviewed and approved"

8 | TWM's marketing materials and brochures that "TWM shared with investors" (*id.* at ¶

9 | 222), "prepar[ed] a series of brochures and other documents in order to induce Plaintiffs

10 | and others to invest with TWM" (*id.* at ¶ 229), and "reviewed the fraudulent marketing

11 | materials together [with TWM] and exchanged input with respect to their content." (*Id.*

12 | at ¶ 230.) However, these conclusory assumptions appear to stem from Plaintiffs' factual

13 | allegation that Andesite Defendants and TWM "conducted business out of the same exact

14 | office suite." (*Id.* at ¶ 219.) Plaintiffs do not offer any factual allegations to support

15 | these conclusory assumptions, which is not sufficient. *See Swartz*, *supra*, 476 F.3d at

16 | 765. Therefore, this claim is **DISMISSED**.

17 | 2. Control of Party Making Fraudulent Sale of Securities (§§ 25501,

18 | 25504)

19 | The TAC's Fourth Claim for Relief alleges Ms. Lakosil controlled the Andesite

20 | entities such that she is liable as a control person for their underlying violation. As noted

21 | above, the TAC fails to particularly plead a misrepresentation or omission connected with

22 | the sale or offer of a security by the Andesite entities. Ms. Lakosil cannot be liable as a

23 | control person for an underlying violation that is not sufficiently alleged. This claim is

24 | **DISMISSED**.

25 | 3. Materially Assisting Fraudulent Sale of Securities (§ 25504.1)

26 | The TAC's Sixth and Ninth Claims for Relief assert that Andesite Defendants are

27 | liable under § 25504.1. As stated above, "allegations demonstrating how the defendant

28 | assisted in the act of selling or offering to sell securities by means of false and misleading

18

1  statements" are required. *Arei II Cases*, 216 Cal. App. 4th at 1015. Assuming that the

2  investments promoted by other defendants qualified as selling or offering to sell

3  securities by means of false and misleading statements, this claim still fails as to Andesite

4  Defendants because there are no specific factual allegations how the Andesite Defendants

5  assisted in that endeavor. There are only general allegations that they were aware of the

6  fraudulent scheme, or conclusory assumptions that they participated in the review of

7  TWM's marketing materials and brochures because they shared office space.

8  Additionally, as previously noted, having "reason to know the facts constituting the

9  violation" is not enough for liability under § 25504.1. *Id.* at 1015. These claims are

10  **DISMISSED**.

11  4. <u>Suppression of Material Fact (Civil Code § 1710)</u>

12  The TAC's Eleventh Claim for Relief Alleges Andesite Defendants failed to

13  disclose a material fact. As explained in more detail above, the TAC must allege a

14  material fact that defendants were obligated to disclose was concealed or suppressed with

15  the intent to defraud. *Marketing West, Inc., supra*, 6 Cal. App. 4th at 612-13. Plaintiffs

16  must also allege that if they had been aware of the concealed fact they would have acted

17  differently and they must allege that they have suffered damage as a result of the

18  concealed fact. *Id.* These allegations must be plead with particularity. *Kearns, supra,*

19  567 F.3d at 1124-25. Plaintiffs allege that Ms. Lakosil was part of a group that induced

20  people to invest by omitting material facts from TWM communications that were

21  directed to Plaintiffs. However, as set forth above, the TAC only contains conclusory

22  assumptions that Andesite Defendants' were involved in the content of *TWM's*

23  communications to Plaintiffs. Plaintiffs have not articulated the material facts which the

24  Andesite Defendants were obligated to disclose or the Andesite Defendants' intent. This

25  claim is **DISMISSED**.

26  ///

27  ///

28  ///

19

1                    5.  <u>Aiding and Abetting Suppression of Material Fact & Breach of</u>

2                        <u>Fiduciary Duty</u>

3        Plaintiffs Twelfth and Fourteenth Claims for Relief allege that Andesite

4 Defendants aided and abetted all defendants because they knew the investments were not

5 being invested pursuant to an optimization plan. Plaintiffs similarly generally allege that

6 Andesite Defendants aided TWM, ACOF, and ACPS in breaching their fiduciary duties

7 to Plaintiffs.

8        As stated above, the TAC lacks factual allegations that Andesite Defendants

9 assisted other defendants in misrepresenting the truth or concealing any information from

10 the Plaintiffs. As to aiding and abetting breach of fiduciary duty, there are no allegations

11 as to how Andesite Defendants assisted TWM, ACOF, and ACPS in breaching their

12 fiduciary duties to the Plaintiffs. These claims are **DISMISSED**.

13 **III.**   **Whether to Grant Leave to Amend**

14        After a responsive pleading is served, a "court should freely give leave [to amend]

15 when justice so requires." Fed. R. Civ. P. 15(a)(2). The policy for granting leave should

16 "be applied with extreme liberality." *Owens v. Kaiser Found. Health Plan, Inc.*, 244

17 F.3d 708, 712 (9th Cir. 2001) (citations omitted). In determining whether to grant leave,

18 a court considers "the presence of any of four factors: bad faith, undue delay, prejudice to

19 the opposing party, and/or futility." *Id.* In the absence of these factors, leave should be

20 freely given. *Hall v. City of Los Angeles*, 697 F.3d 1059, 1072-73 (9th Cir. 2012)

21 (reversing district court's denial of leave for failure to meet and confer).

22        The Court finds Plaintiffs have not shown good cause to grant leave to file a fourth

23 amended complaint. In their Opposition, Plaintiffs requested leave to amend stating only

24 that: "'there is a reasonable possibility that the defect can be cured by amendment'"

25 (Docket No. 68 (quoting *Blank v. Kirwan* (1985) 39 Cal.3d 311, 318)), and "*if remanded*,

26 they could add facts developed in their analysis and investigation to cure insufficiencies,

27 if any are found to exist, and to add specificity if any found lacking." (Docket Nos. 68 at

28 14; 69 at 21) (emphasis added.)

1    First, as stated above, Plaintiffs did not renew their motion for remand or conduct

2    any jurisdictional discovery that would support a renewed motion for remand.  Based on

3    the supplemental briefing provided by the parties, remand is not appropriate at this time.

4    Second, Plaintiff's filed their initial complaint on May 16, 2014.  (Docket No. 14-1 at 4.)

5    Since then, Plaintiffs have amended their complaint three times.  Plaintiffs' TAC failed to

6    address the deficiencies identified by this Court in its March 9, 2016, Order granting

7    Defendants' motions to dismiss the SAC.  (Docket No. 50.)  Third, Plaintiffs did not

8    identify any new facts that could cure the deficiencies, already identified by this Court, in

9    a fourth amended complaint.  As a result, Plaintiffs have not shown "a reasonable

10   possibility" that the defects could be cured by an amendment.  *Blank*, 39 Cal.3d at 318.

11   Fourth, Defendants would be prejudiced if Plaintiffs were allowed to file a fourth

12   amended complaint – having prevailed twice on their motions to dismiss and without

13   Plaintiffs demonstrating the existence of new facts to justify amendment of their claims.

14   Therefore, Plaintiffs' request for leave to amend as to the claims against the

15   moving Defendants is **DENIED**.

### CONCLUSION

17   For the reasons set forth above, the Court **GRANTS** Dionne's and the Andesite

18   Defendants' Motions to Dismiss.  The claims against the Andesite Defendants, Dionne

19   and SoCal Accounting are **DISMISSED with prejudice**.  Plaintiffs' request to amend

20   their Complaint as to these Defendants is **DENIED**.

21   **IT IS SO ORDERED.**

23   DATED: January /9, 2017

HON. ROGER T. BENITEZ
United States District Judge

21

3:15-cv-1632-BEN-NLS