# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ALBERT CALDERON, an individual on behalf of himself and all others similarly situated, et al.,<br><br>Plaintiffs,<br><br>v.<br><br>TOTAL WEALTH MANAGEMENT, INC. et. al,<br><br>Defendants. | Case No.: 3:15-cv-01632-BEN-NLS<br><br>**ORDER GRANTING DEFENDANT JED COOPER'S MOTION TO DISMISS** |

Before the Court is Defendant Jed Cooper's Motion to Dismiss Plaintiff's Third Amended Complaint. (Docket No. 122.) The motion is fully briefed. For the reasons that follow, Defendant's motion is **GRANTED**, and the Plaintiff's claims against Defendant are **DISMISSED**.

## BACKGROUND

Plaintiffs allege that investors were solicited to invest in Total Wealth Management ("TWM") and its affiliated companies, Altus Capital Opportunity Fund, LLC ("ACOF") and Altus Capital Portfolio Series ("ACPS"), primarily through a weekly radio program, financial awareness seminars, and community engagement. Investors were allegedly misled into believing their funds were being safely invested based on investment

1

portfolio risk when in fact, investments were being channeled primarily to Private Placement Capital Notes LLC II ("PPCN"), LJL Secured High Yield Income Fund I, LLC ("LJL"), and Aegis Retail Group LLC ("AEGIS") in exchange for fees paid by the entities, without disclosure to investors.

TWM was allegedly under the control or direction of the following defendants by virtue of their ownership or positions as officers: Jacob Cooper,[1] co-founder and majority owner of TWM; Nathan McNamee ("McNamee"), TWM's president and chief compliance officer for relevant periods; and David Shoemaker ("Shoemaker"), co-founder and former chief compliance officer. Plaintiffs assert that at all relevant times Defendant Jed Cooper was a TWM Associate Planner and Client Services Manager, and served as some of the Plaintiffs' contact at TWM.

## PROCEDURAL HISTORY

The procedural history of this case is well known to the parties and detailed in the Court's *January 19, 2017 Order* granting dismissal of other defendants from this action and *October 11, 2017 Order* denying the Plaintiffs' request for entry of default judgment, denying Cooper's motion to dismiss for want of prosecution, and denying the parties' joint motion to stay the action, which the Court incorporates by reference herein. (*See* Docket No. 81 at pp. 2-3; Docket No. 118 at pp. 2-3.)

Plaintiffs' operative Third Amended Complaint ("TAC") alleges five claims for relief against Cooper: (1) control of party making fraudulent sale of securities in violation of California Corporations Code[2] §§ 25501, 25504; (2) fraudulent sale of securities in violation of § 25504.1; (3) suppression of material fact in violation of California Civil Code § 1710; (4) aiding and abetting suppression of material fact; (5)

---

[1] Defendant Jacob Cooper is Defendant Jed Cooper's brother. To avoid confusion, the Court refers to Jacob Cooper by his full name, and Jed Cooper as "Cooper."

[2] All further code section references are to the California Corporations Code unless otherwise noted.

aiding and abetting breach of fiduciary duty. Cooper now moves for dismissal of all claims against him pursuant to Federal Rule of Civil Procedure 12(b)(6).

**LEGAL STANDARD**

"[A] complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 677-78 (2009). "A claim is facially plausible 'when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged.'" *Zixiang Li v. Kerry*, 710 F.3d 995, 999 (9th Cir. 2013) (quoting *Iqbal*, 556 U.S. at 678).

When considering a Rule 12(b)(6) motion the court must "accept as true facts alleged and draw inferences from them in the light most favorable to the plaintiff." *Stacy v. Rederite Otto Danielsen*, 609 F.3d 1033, 1035 (9th Cir. 2010) (citing *Barker v. Riverside Cnty. Office of Educ.*, 584 F.3d 821, 824 (9th Cir. 2009)). On the other hand, bare, conclusory allegations, including legal allegations couched as factual, are not entitled to be assumed to be true. *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007). "[T]he tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions." *Iqbal,* 556 U.S. at 678. "While legal conclusions can provide the framework of a complaint, they must be supported by factual allegations." *Id.* at 664.

Allegations of fraud must be stated with particularity. Fed. R. Civ. P. 9(b). "In order to plead fraud with particularity, the complaint must allege the time, place, and content of the fraudulent representation; conclusory allegations, do not suffice." *Shroyer v. New Cingular Wireless Serv., Inc.*, 622 F.3d 1035, 1042 (9th Cir. 2010) (citing *Moore v. Kayport Package Express, Inc.*, 885 F.2d 531, 540 (9th Cir. 1989)); *Kearns v. Ford Motor Co.*, 567 F.3d 1120, 1124 (9th Cir. 2009) (requiring plaintiffs plead who, what, when, where, and how). "Rule 9(b) does not allow a complaint to merely lump multiple defendants together, but 'requires plaintiffs to differentiate their allegations when suing more than one defendant . . . and to inform each defendant separately of the allegations

3

3:15-cv-01632-BEN-NLS

surrounding his alleged participation in the fraud." *Swartz v. KPMG LLP*, 476 F.3d 759, 765 (9th Cir. 2007) (quoting *Haskin v. R.J. Reynolds Tobacco Co.*, 995 F. Supp. 1437, 1439 (M.D. Fla. 1998)). "[G]eneral allegations that the 'defendants' engaged in fraudulent conduct" with only specific allegations as to some, "patently fail[s] to comply with Rule 9(b)." *Id.* at 765.

**DISCUSSION**

**A. Cooper's Motion to Dismiss**

Cooper argues that each of Plaintiffs' claims against him are subject to the heightened pleading standards of Federal Rule of Civil Procedure 9(b), and that dismissal is appropriate due to the TAC's dearth of specific factual allegations to support each of the claims against him. The Court agrees.

1. <u>Control of Party Making Fraudulent Sale of Securities (§§ 25501, 25504)</u>

The TAC's Second Claim for Relief alleges Cooper is liable for misrepresenting or omitting material facts in connection with the purchase or sale of a security in violation § 25501 as a secondary actor under § 25504.

> Under . . . section 25504 the following persons are jointly and severally liable for selling unqualified securities, with those who have engaged in the unlawful practice: "Every person who directly or indirectly controls a person liable under Section 25501 or 25503, every partner in a firm so liable, every principal executive officer or director of a corporation so liable, ... unless the other person who is so liable had no knowledge of or reasonable grounds to believe in the existence of the facts by reason of which the liability is alleged to exist."

*Hellum v. Breyer*, 194 Cal. App. 4th 1300, 1306 (1st Dist. 2011) (quoting § 25504).

As Cooper accurately points out, the 79-page TAC contains minimal *specific* factual allegations about his alleged wrongful conduct, including his alleged control over

///
///
///

4

TWM. Indeed, Plaintiffs' TAC only generally alleges that "the Coopers"[3] and four other defendants associated with TWM

> controlled TWM, ACOF, and ACPS through ownership, as officers, board of director members, as principal executive officers or directors, or as persons occupying a similar status or performing similar functions or as an employee of TWM, ACOF, or ACPS because they are employees who materially aided the acts or transactions constituting the violations.

(TAC ¶ 267.) Yet in spite of this allegation, Cooper is not identified as an owner or officer of TWM or any of its affiliated companies. Rather, the TAC alleges Cooper was "a TWM Associate Planner and Client Services Manager" and "served as several plaintiff investors' contact at TWM at relevant times." (TAC ¶ 70.)

In a single paragraph in their opposition, Plaintiffs contend they "stated facts from which the inference can be drawn that Jed Cooper had the power to control the general affairs of the entity violated the securities laws [sic]. Moreover, Jed Cooper directly or indirectly controlled or influence [sic] the specific corporate policy which results in primary liability." (Opp'n at p. 10.) However, they do not cite any specific allegations in the TAC to support their conclusion. And the Court's review of the TAC indicates there are none. Thus, even if the Court assumed a violation of § 25501 occurred, Plaintiffs' have not met their pleading burden to plausibly allege Cooper's control over any person or any entity. Accordingly, this claim against Cooper is **DISMISSED**.

///

///

---

[3] While the TAC contains some allegations against Jed specifically, the majority of the TAC sets forth allegations attributable to "the Coopers," which Plaintiffs do not expressly define, but the Court infers means both Jacob and Jed Cooper. Although this fact alone could be grounds for dismissal, in the interest of justice and to preserve judicial economy, the Court shall construe the collective allegations as an individual allegation against Cooper where appropriate for resolution of the motion. Fed. R. Civ. P. 1.

### 2. Materially Assisting Fraudulent Sale of Securities (§ 25401.1)

The TAC's Sixth Claim for Relief alleges Cooper violated § 25401.1, which "makes a person jointly and severally liable for a violation of section 25401 if that person 'materially assists in the violation of . . . Section 25401 . . . with the intent to deceive or defraud.'" *Arei II Cases*, 216 Cal. App. 4th 1004, 1014 (1st Dist. 2013). The material assistance must be to "the scheme that constituted a violation of the securities laws" because the underlying violation "is selling or offering to sell a security by means of false and misleading statements." *Id.* "[A]llegations demonstrating how the defendant assisted in the act of selling or offering to sell securities *by means of false and misleading statements*" are required. *Id.* at 1015 (emphasis added). Because Plaintiffs allege Cooper engaged in a course of fraudulent conduct, they must also allege the "who, what, when, where, and how of the misconduct charged." *Kearns v. Ford Motor Co.*, 567 F.3d 1120, 1124-25 (9th Cir. 2009).

Plaintiffs' opposition again offers a single-paragraph retort. Plaintiffs argue, in a conclusory fashion, that "Jed Cooper acted in pursuance of a common plan to obtain client/plaintiff funds for TWM and then to hide the revenue sharing fees and true value of the funds. . . . The liability of the defendants is thus joint and several. . . . Each participant in a conspiracy is responsible as a joint tortfeasor for all damages ensuing from the underlying wrong, regardless of whether he or she was a direct actor or of the degree of his or her activity." (Opp'n at p. 10.) But again they fail to point to any specific factual allegations in the TAC to support the inference they wish the Court draw.

Based on the Court's review of the TAC, Plaintiffs allege Cooper "owed a fiduciary duty to plaintiff investors for whom he served as a contact at TWM," and "knew, but did not disclose, the alleged scheme to plaintiffs and members of the class for whom he served as the primary contact at TWM." (TAC ¶ 69.) But the TAC only specifically alleges that Cooper communicated with three plaintiffs: Lead Plaintiff Albert Calderon, and Plaintiffs Donald Clugston and Choyuun Cornell. As to Mr. Calderon, Plaintiffs allege that, on 12 November 12, 2009, Mr. Calderon "entered into a written

6

3:15-cv-01632-BEN-NLS

Investment Advisory Contract with TWM signed by [Jacob Cooper]." (*Id.* ¶ 18.) Subsequently, Jacob Cooper relocated to Utah, and Cooper thereafter "served as Mr. Calderon's contact at TWM." (*Id.*) As to Mr. Clugston, the TAC alleges Cooper referred him to former defendant Mark Dionne.[4] (*Id.* ¶ 203.)

Noticeably absent from these allegations are specific allegations as to how Cooper assisted in selling or offering to sell securities to Mr. Calderon and Mr. Clugston *by means of false and misleading statements*. *Arei II Cases*, 216 Cal. App. 4th at 1015. The TAC is completely devoid of any allegations of specific statements Cooper made to Mr. Calderon. As to Mr. Clugston, the only statement that can be inferred from the facts is Cooper's referral of former defendant Mark Dionne, who in turn merely "promoted investing TWM [sic]." (TAC ¶ 203.) As the Court has explained, merely alleging a person promotes or advises use of an investment company or an agent does not, in it of itself, constitute fraud under the heightened pleading standards of Federal Rule of Civil Procedure 9(b). Plaintiffs must at least specify statements they claim were misleading. Fed. R. Civ. P. 9(b). (Docket No. 81, *January 19, 2017 Order* at p. 13.)

With respect to Plaintiffs' allegations that Cooper "persuaded [Ms. Cornell] to move her money to TWM with the lure of high returns and monthly interest payments" and told her that "her investments would be safe" (TAC ¶ 40), Plaintiffs' do not allege *specific* facts as to the amount Cooper said Ms. Cornell would receive in "returns and monthly interest payments," or when, where, or how this statement was made. Nor do Plaintiffs specify the when, where, or how Cooper's statement that Ms. Cornell's "investments would be safe" was made. Instead, Plaintiffs merely provide their own legal conclusion that Cooper owed Ms. Cornell (and the other plaintiffs) a duty to disclose the alleged scheme that Cooper was allegedly aware of, and an accusation that Cooper failed to perform that duty.

---

[4] The Court previously dismissed Mark Dionne as a defendant on January 19, 2017. (Docket No. 81.)

Additionally, the TAC lacks factual allegations from which the Court may draw a plausible inference that Cooper intended to deceive or defraud Mr. Calderon, Mr. Clugston, or Ms. Cornell (or any other plaintiff). The Court reiterates that just knowing or having "reason to know the facts constituting the violation" is not enough for liability under § 25504.1. *Arei II Cases*, 216 Cal. App. 4th at 1015 (contrasting the liability for a broker-dealer under § 25504). It might be that Cooper was aware of a scheme, but "[a]ssisting in a violation is not the same as assisting someone achieve a violation, which can presumably be accomplished without having any involvement in the violation itself." *Id.* at 1017. This claim is **DISMISSED**.

### 3. Suppression of Material Fact (California Civil Code § 1710)

The TAC's Eleventh Claim for Relief alleges Cooper violated California Civil Code section 1710. Section 1710 defines the elements of actionable deceit and provides for four kinds of deceit, including concealment – "suppression of a fact, by one who is bound to disclose it, or who gives information of other facts which are likely to mislead for want of communication of that fact." Cal. Civ. Code § 1710(3) "The elements of an action for fraud and deceit based on concealment are: (1) the defendant must have concealed or suppressed a material fact, (2) the defendant must have been under a duty to disclose the fact to the plaintiff, (3) the defendant must have intentionally concealed or suppressed the fact with the intent to defraud the plaintiff, (4) the plaintiff must have been unaware of the fact and would not have acted as he did if he had known of the concealed or suppressed fact, and (5) as a result of the concealment or suppression of the fact, the plaintiff must have sustained damage." *Marketing West, Inc. v. Sanyo Fisher (USA) Corp.*, 6 Cal. App. 4th 603, 612-13 (2d Dist. 1992).

As discussed above, because this claim sounds in fraud, Plaintiffs' must allege the "who, what, when, where, and how of the misconduct charged." *Kearns*, 567 F.3d at 1124-25. Plaintiffs' opposition generally argues:

> Jed Cooper worked closely with his brother and designated
> clients as part of a tight-knit group of close friends and

8

> associates who agreed to obtain plaintiffs funds[sic] for themselves and each other by misrepresenting and omitting material facts from communications TWM directed to plaintiffs. . . . Once investors were hooked TWM induced them to transfer their investment funds, pension money, and savings to TWM's control. When investors needed personal investment services from a financial planner, and when TWM wanted to induce more investors to give their money, Jed Cooper used his wife and children and free food and gift to seal the deal at dinner meals [sic].

(Opp'n at pp. 10-11) (internal citations omitted.) However, a review of the TAC demonstrates Plaintiffs have not alleged any particular allegations as to what Cooper misrepresented, when he made any misrepresentation, where he made any misrepresentation, how he conveyed any representation, or when he should have disclosed something.

In particular, Plaintiffs' argument that the TAC alleges Cooper "used his wife and children and free food and gift to seal the deal at dinner meals [sic]" is not a reasonable inference the Court may draw. First, Ms. Cornell is the only plaintiff alleged to have met Cooper's wife and children. Second, at best these allegations establish Ms. Cornell discussed her nursing profession with Cooper's wife, and may have received a "gift-pack." (TAC ¶ 41.) In other words, it is not clear to the Court how Ms. Cornell's meeting Cooper's family, talking about an unrelated subject with Cooper's wife, and receiving a gift establishes a plausible inference that Cooper suppressed a material fact.

Moreover, Plaintiffs failed to address Cooper's argument that the TAC fails to sufficiently plead the requisite elements of intent. Thus, the Court concludes Plaintiffs concede the TAC lacks specific allegations that Cooper acted with the intent to defraud. *Marketing West,* 6 Cal. App. 4th at 612-13 (2d Dist. 1992). As a result, this claim is **DISMISSED**.

4. Aiding and Abetting Claims

Cooper moved to dismiss Plaintiffs' claims for aiding and abetting suppression of material fact and aiding and abetting breach of fiduciary duty. Plaintiffs did not address

these claims in their opposition.[5] Furthermore, the TAC does not include any specific allegations as to how or when Cooper aided and abetted. Accordingly, these claims are **DISMISSED**.

B.     **Whether to Grant Leave to Amend**

After a responsive pleading is served, a "court should freely give leave [to amend] when justice so requires." Fed. R. Civ. P. 15(a)(2). In determining whether to grant leave, a court considers "the presence of any of four factors: bad faith, undue delay, prejudice to the opposing party, and/or futility." *Id.* In the absence of these factors, leave should be freely given. *Hall v. City of Los Angeles*, 697 F.3d 1059, 1072-73 (9th Cir. 2012) (reversing district court's denial of leave for failure to meet and confer).

The Court finds Plaintiffs have not shown good cause to grant leave to file a fourth amended complaint. Plaintiffs' opposition requested leave to amend stating only that: "Plaintiffs would, and could, allege fraud and unfair practices in more detail as to Jed Cooper." (Opp'n at p. 11.)

First, Plaintiffs filed their initial complaint on May 16, 2014. (Docket No. 14-1 at 4.) Since then, Plaintiffs have amended their complaint three times, including amendment of claims for the same violations advanced against Defendant Cooper. Second, Plaintiffs did not identify any new facts that could cure the deficiencies in a fourth amended complaint. As a result, Plaintiffs have not shown "a reasonable possibility" that the defects could be cured by an amendment. *Blank v. Kirwan*, 39 Cal. 3d 311, 318 (1985). Third, in this case, Defendant would be prejudiced if Plaintiffs were allowed to file a fourth amended complaint, where, as here, Plaintiffs' TAC failed to cure the deficiencies identified by this Court for the identical claims alleged against other defendants in its *March 9, 2016* and *January 19, 2017 Orders* granting other defendants' motions to dismiss their previous pleadings (Docket Nos. 50, 81, respectively), and

---

[5] The Court notes Plaintiffs have failed to address arguments for dismissal of these claims in previous motions to dismiss. (*See* Docket No. 50 at p. 8; Docket 81 at p. 20.)

nevertheless failed to demonstrate the existence of new facts to justify a fourth amendment of their claims.

Therefore, Plaintiffs' request for leave to amend as to the claims against Defendant Cooper is **DENIED**.

## CONCLUSION

For all of the foregoing reasons, Defendant's motion to dismiss is **GRANTED**, and Plaintiff's claims against Defendant Jed Cooper are **DISMISSED without leave to amend**.

**IT IS SO ORDERED.**

Dated: April 4, 2018

_____
Hon. Roger T. Benitez
United States District Judge